# Richmond

RUBYE A. GLASS V. DAVID PENDER GROCERY COMPANY, INC.

November 20, 1939.

Record No. 2118.

Present, All the Justices.

*H. J. Tucker* and *James S. Easley,* for the plaintiff in error.

*Sinnott & May* and *V. P. Randolph, Jr.,* for the defendant in error.

SPRATLEY, J., delivered the opinion of the court.

This is an action instituted by Mrs. Rubye A. Glass against the David Pender Grocery Company, Inc., to recover damages for injuries to her person received on April 7, 1938, which she alleges were caused by the negligence of the defendant corporation.

There is not a material fact in controversy in the case, either as to the cause of the injuries or as to their nature and extent.

The defendant conducts a general grocery store at Halifax, Virginia. Mrs. Glass entered the store on April 7, 1938, as a customer. She purchased some groceries and started on her way out of the store. Just before she reached an outside door, she stepped into a small hole in the floor. She had not observed the hole nor any indication of a break in the flooring. In falling, one foot and her leg went through the hole to the knee. She fell down backwards to a sitting position, her hip hitting the floor.

The hole had been caused only a short time before the accident by a wheel of a small hand truck breaking one of the flooring planks. The broken plank did not fall entirely out of place, and the break was not open and obvious. The defendant's agent, the manager in charge of the store, knew of the breaking of the flooring at the time of its occurrence, before Mrs. Glass entered the store. He placed no covering or protection over the broken place, and gave Mrs. Glass no warning of its existence.

Under appropriate instructions, given without exception by either party, the jury found a verdict for the plaintiff.

On the ground that the damages awarded were inadequate under the facts of the case, the plaintiff moved the trial court to set aside the verdict and to grant her a new trial on the sole issue as to the *quantum* of damages. This motion was overruled, and judgment was entered in accordance with the verdict. The defendant took no exception to the verdict, nor to the ruling of the trial court.

The liability of the defendant is clear. The full preponderance of the evidence supports a right of recovery. There is no issue here on that point nor need it be further considered.

The sole question before us is whether the damages awarded are adequate and sufficient compensation for the injuries sustained by the plaintiff.

The evidence as to the injuries of the plaintiff is furnished by three competent physicians of high standing and experience, by Mrs. Glass and by her husband. The evidence

of two of these physicians was presented by depositions. There is no contradiction of any of their testimony.

Mrs. Glass immediately observed after her fall that she could not walk without some difficulty. She went home and dressed her wounds. In the afternoon she began suffering severe pains in the region around the lower spine and hips and extending to the bottom of her foot. She called in her family physician, Dr. I. K. Briggs, who has since continuously treated her with the assistance of the doctors hereinafter named.

As a result of the fall, it was found that she had suffered a sprain in the left sacroiliac joint (the junction of the spine with the hip bone), an irritation of the sciatic nerve, injury to the internal lateral ligaments of her left knee and to the cartilage inside the knee joint, in addition to external bruises and abrasions. All of the injuries, especially to the sciatic nerve, one of the largest nerves in the body, are of an extremely painful nature.

Dr. Briggs first applied a cast to the leg from the foot to the hip. This cast was left on for three weeks. During that time her back was also strapped up. When this cast was removed in August, 1938, the patient was still suffering so much that her physician sent her to Richmond to consult Dr. C. C. Coleman, a neurological specialist. Dr. Coleman after an extensive examination called in Dr. H. P. Mauck, an orthopedic surgeon. Upon his advice, the sciatic nerve was stretched and a new cast applied from the arm pits down to and over the foot on the injured side and down to the knee on the right side. The muscles were massaged and manipulated. It was necessary to administer anaesthetics while this treatment was being given. Mrs. Glass was a patient in one hospital eleven days and in another six weeks and five days.

On the day of the trial, December 3, 1938, eight months after the accident, Mrs. Glass was still wearing a stout garment with extra steel stays and a sacroiliac belt combination in order to enable her to sit more easily. The injuries to the ligaments and cartilages in her knee joint made it

still very painful for her to walk, the knee giving away in extremes of flection and extension. She was unable to stand on her feet for any length of time or do any kind of lifting or bending.

In the opinion of the physicians, it will be necessary for Mrs. Glass to return to a hospital for an operation to remove the torn or loose cartilage in the knee. She must stay in the hospital two or three weeks. Two or three months will be required for a recovery from the operation and the disability pre-existing the operation, the wasting of the thigh and the disuse of the knee joint. If the operation is not performed, she will have "considerable permanent disability," the loose cartilage in the joint causing continual irritation and irreparable damage to the joint. She must always suffer, even though she undergoes the operation, a permanent disability of ten to twenty percent in the use of her knee. It is thought that with continued treatment the injury to her back will clear up in six to twelve months.

The suffering and prolonged disability has produced a highly nervous condition in Mrs. Glass. The physicians are agreed that the objective symptoms are perfectly consistent with the subjective symptoms of which she complained.

Mrs. Glass has been unable, in the meantime, to perform her usual house work, or to give attention to her three children, respectively aged four, eight and eleven years. She and her children have moved to the home of her mother in order to send the children to school properly prepared. The expenses incurred in connection with the injuries included hospital and doctors fees and medical and traveling expenses amounting to $931.70.

To compensate Mrs. Glass for the expenses incurred, the sums necessary to be expended in the future to recover her health, for her personal injuries and for her mental and physical suffering, the jury awarded her $3,000.00.

It is unnecessary to examine the vast number of cases and rules from other states involving the rule applicable to the question before us. The rule has been suf-

ficiently set forth in Virginia. We have from time to time consistently held that the verdict of a jury in personal injury cases will not be set aside as inadequate or excessive unless it is made to appear that the jury has been actuated by prejudice, partiality or corruption, or that it has been misled by some mistaken view of the merits of the case. The following cases review and analyze the rule prevailing in Virginia and its application in many former cases: *Aronovitch* v. *Ayres,* 169 Va. 308, 193 S. E. 524; *Stallard* v. *Atlantic Greyhound Lines,* 169 Va. 223, 192 S. E. 800; *Rawle* v. *McIlhenny,* 163 Va. 735, 177 S.E. 214; *Stuart Circle Hospital Corporation* v. *Curry,* 173 Va. 136, 3 S. E. (2d) 153.

There is nothing in this case to show that the jury was actuated by prejudice, passion or corruption. Its verdict cannot be disturbed unless, in the light of all of the evidence, the award be so manifestly inadequate as to show very plainly that the verdict resulted from a misconception or misinterpretation of facts which should have guided the jury to a just conclusion.

In a case involving the question of excessive damages, Mr. Justice Gregory, speaking for the court, said in *Kenny Company* v. *Solomon,* 158 Va. 25, 163 S. E. 97: "If the verdict is so disproportionate to the injury as to suggest the inference that it is not the result of fair, calm and unbiased judgment of the jury, the verdict ought to be set aside as excessive." The same rule applies where the claim is that the damages are inadequate.

Notwithstanding the weight and effect which has been given to the verdict of a jury in cases involving damages for personal injuries and the fact that no standard measure of damages can be arrived at for the pain and suffering of an individual, the finding of a jury is still subject to the control of the courts. *Kenny Company* v. *Solomon, supra; C. & O. Railway Company* v. *Arrington,* 126 Va. 194, 217, 101 S. E. 415, 423.

Each case must be considered on its own merits and in view of the peculiar facts of that case. If the

amount of the verdict returned bears no reasonable relation to the damages suggested by the facts in the case, and is manifestly out of line and at variance with the facts, courts must exercise control in the interest of fairness and justice.

As difficult or impossible as it may be to fix any standard by which to measure, in dollars and cents, the value of physcial pain and suffering, it is not so difficult to perceive a misconception of value where the amount awarded is grossly and manifestly out of line with the nature and extent of the injuries. In the latter instance, we are aided by our sense of justice and at times by the "average verdict rule." *Aronovitch* v. *Ayres, supra.*

In the absence of prejudice, passion or corruption, the jury was in all probability actuated by the highest motives; but such motives do not prevent men from sometimes going astray. A variance is frequently due to a misconception of facts, or a false valuation of their importance or resulting effect. It may have been the technical nature of the disabilities suffered by the injured person and the fact that her injuries were internal and not objective that misled the jury in their estimate of the damages. It may have been the fact that the negligence of the defendant was passive rather than active or intentional, although the injuries were none the less serious, which moved the jury to minimize the damages. Otherwise, we cannot understand how the jury disregarded the full effect of the evidence as to the nature and extent of the injuries.

In the instant case, the evidence clearly shows the infliction of serious and extensive injuries of a most painful nature. The injured person has been almost wholly incapacitated for eight months. She must undergo a future operation, spend weeks in a hospital, continue medical treatment and await a period of six to twelve months in the hope of a recovery which never will be complete.

In the final analysis, her fall has resulted in a series of complicated internal injuries, a condition which has wrecked the body and nerves of a normal woman, thirty-seven years

of age, caused manifest physical disability and great personal discomfort, impaired her working capacity, and created for her the prospect of months of suffering and a decreased ability to enjoy health and comfort.

She has already expended nearly $1,000 in the effort to be relieved and cured. It is not difficult to foresee the expenditure of another $1,000 and, if the verdict of the jury be allowed to stand, she will receive the sum of $1,000 only as further compensation for the injuries recited,—injuries of a temporary and permanent nature affecting her nerves, muscles, bones and body, and involving a long period of acute pain, suffering and worry.

We are of opinion that the amount of the damages awarded for such extensive injuries bears no reasonable relation to the loss inflicted upon the plaintiff. A new trial confined solely to the only question in issue, the amount of damage inflicted, provides merely an opportunity for a full and fair investigation of the. extent of the injuries.

The peculiar facts of this case bring us to this conclusion. Those facts are sufficient to bring the case within the previously announced exceptions to the general rule which support a jury's measure of damage in cases of personal injury under other circumstances. It is not our purpose to change the principles of the general rule or to enlarge or increase the extent of its application. This case exemplifies the application of the rule under its peculiar facts, and the salutary control which the courts should exercise over the verdicts of juries.

The judgment of the trial court is reversed, and a new trial is granted to the plaintiff in error; but the new trial is limited to the sole question of the proper amount of damages to be awarded.

*Reversed and remanded.*