# Richmond

BERTHA P. DRUDGE V. ELEANOR B. COOPER, ET ALS., ETC.

May 1, 1950.

Record No. 3646.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Staples and Miller, JJ.

The opinion states the case.

*Rixey & Rixey*, for the plaintiff in error.

*Ashburn, Agelasto & Sellers*, for the defendants in error.

HUDGINS, C. J., delivered the opinion of the court.

Bertha P. Drudge avers in her petition for this writ of error that the judgment of $2,500 she obtained against

Eleanor B. Cooper and others is grossly inadequate, and prays that the verdict be set aside, the judgment reversed and the case remanded for trial on one issue only—the quantum of damages.

Two issues were presented to the jury: (1) Whether the defendants were guilty of actionable negligence. (2) What damages, if any, the plaintiff was entitled to recover.

Plaintiff's testimony tends to establish that on August 15, 1948, she and her two children, Richard H. Perkins, Jr., Shirley Ann Perkins, 17 and 14 years of age respectively, and her former husband, Richard H. Perkins, Sr., *en route* from Virginia Beach to plaintiff's home in Chesterfield county, stopped at Ocean View Park, in the city of Norfolk, to take a ride on an amusement device commonly known as the "Sky Rocket." This is the same device which was formerly called "Roller Coaster," "Leap the Dip," and "Figure Eight." It has a stationary track, with a number of high pinnacles, low steep dips and tortuous curves, both ascending and descending. A train of three small cars coupled together are operated on the track. Each car contains three seats, each seat accommodating two passengers. Across the front of each seat is an iron bar designed for passengers to steady themselves as the car goes up and down the steep dips and around the curves.

One end of the bar is attached to the side of the car in such manner that it can be raised for the purpose of permitting passengers to enter or leave the car. When properly functioning and while the car is in motion, the loose end of the bar is locked in a down position across the laps of the passengers so that the holding support for them is stable and rigid rather than movable. When not locked the bar may be moved up or down.

As the cars move from the loading platform, they drift by gravity into a well where the locking mechanism on the side of the car is designed to be tripped by means of a projecting steel arm on the side of the track which locks the bars in a rigid and down position.

The seventeen-year old boy got in the front seat of the middle car. Plaintiff and her daughter got in the middle seat of the same car. Plaintiff testified that when the cars started down the first dip the bar "started pulling us up over the top of my little boy's head." She became frightened and screamed to her little girl "'For God's sake, turn loose the bars and hold on to the side,' and about the time I spoke it started up another curve, and that is when the bars threw us backwards and I hit my head on the back of the seat. I think it must have been the back. It is the only way I can figure what it was."

Plaintiff's contention is that failure of defendants to see that the bar across the seat occupied by her was locked, and failure to warn her of the danger of holding to the bar when it was unfastened was negligence which was the proximate cause of her injury.

The testimony for defendants tends to show that the mechanism of this amusement device was properly inspected, was in good working order, and that the bar across the laps of plaintiff and her daughter was down when the car left the loading platform and started up the first incline.

The evidence as to the liability of defendants was in sharp conflict and it was within the province of the jury to return a verdict for either plaintiff or defendants. On the question of liability the court gave three instructions for plaintiff which fairly submitted her theory of the case to the jury.

After the jury had accepted plaintiff's theory of the case as to the liability, it then became its duty to ascertain the amount of plaintiff's damages. The evidence on this issue may be summarized as follows:

When plaintiff, complaining of a bruise on her head, stepped out of the car defendants' employee took her to the office. From there, on the advice of the doctor, she was taken to DePaul Hospital in Norfolk, where she was examined and treated. There was no abrasion of the skin, no concussion or bone injury, but there was a large "knot" on the back of her head. Doctor Wm. H. Whitmore

X-rayed her while she was in the hospital and found that she was suffering from a form of arthritis, or joint disease, which involved the 5th, 6th and 7th vertebrae. The arthritis was not caused by the injury to plaintiff's head.

Four days after the accident, upon request of plaintiff, she was taken to the Medical College of Virginia Hospital where she was treated by Doctor James T. Tucker. His diagnosis, based upon the history of the patient and his examination, was that she had "a sprained neck and sprained low back," which could have been caused by the accident. He prescribed a Thomas collar for her neck and a Taylor back brace. She stayed in the hospital until September 5th, and thereafter was treated by Doctor Tucker in his office.

Plaintiff's evidence tends to show that her expenditures and loss of time due to the injury sustained on August 15, 1948, totaled $1,836.45. The case was not tried until April 6, 1949. In October, 1948, she was involved in an automobile accident in which she received another injury to her head. On October 4th, she consulted Doctor L. B. Sheppard, an eye specialist in Richmond, complaining of double vision, dizziness and headaches following her ride on defendants' "Sky Rocket." Doctor Sheppard stated that plaintiff had normal vision in each eye, but double vision within a distance of approximately two feet and that she had consulted an eye specialist several years prior to that time. As far as he could tell, there was no "physiological connection" between the injury suffered by plaintiff on August 15, 1948, and the condition of her eyes. It follows that Doctor Sheppard's bill for examination of the eyes was not properly chargeable to these defendants.

Plaintiff also contends that due to the injury she lost two and a half months from work and thereby sustained a loss of earnings totaling $737.50. It is difficult to determine from plaintiff's testimony what proportion of the two and a half months lost from work was due to injuries sustained on August 15, 1948, and what proportion of such loss was due to other causes for which defendants were

not responsible. She was not definite and clear as to the amount of her earnings and the amount she made when she worked overtime. Prior to August 15, 1948, she was treated by a local doctor for nervous, emotional and physical disturbances due to menopausal changes.

When all the evidence on the issue of the quantum of damages is considered, we cannot say that the jury's verdict for $2,500 is grossly inadequate.

We said in *Glass* v. *David Pender Grocery Co.*, 174 Va. 196, 5 S. E. (2d) 478: "Each case must be considered on its own merits and in view of the peculiar facts of that case. If the amount of the verdict returned bears no reasonable relation to the damages suggested by the facts in the case, and is manifestly out of line and at variance with the facts, courts must exercise control in the interest of fairness and justice."

The jury saw and observed plaintiff and her witnesses while testifying. They were informed as to the extent of her injuries, her condition before and after the accident, and the various items of expense and loss of earnings chargeable to these defendants. The verdict was approved by the trial judge and it seems to bear a reasonable relation "to the damages suggested by the facts in the case."

Mr. Justice Holt stated in *Aronovitch* v. *Ayres*, 169 Va. 308, 193 S. E. 524: "The verdict, large or small, must stand unless it is manifestly out of line and shocks our sense of justice." See *Danville Community Hospital* v. *Thompson*, 186 Va. 746, 43 S. E. (2d) 882, 173 A. L. R. 525; *National Fruit Product Co.* v. *Wagner*, 185 Va. 38, 37 S. E. (2d) 757.

Plaintiff contends that even though the jury found for her on the question of liability, the case should be reversed on the ground that the court, over her objection, gave an erroneous instruction on this issue. This instruction is as follows:

"The Court instructs the jury that if they believe from the evidence that the amusement device operated by de-

fendants consisted of such appliances and mechanisms as are generally approved for use on similar devices, and that such mechanisms were regularly inspected by competent employees at customary intervals, and that such inspection disclosed no defects, then defendants were not guilty of any negligence and the jury should find their verdict in favor of defendants."

We do not approve this instruction. However, it is on the issue of liability and the jury evidently not only disregarded it, but all of the instructions on the question of liability granted for defendants, and applied the instructions for plaintiff on this issue.

The two issues—the liability of defendants and the quantum of damages—were clear-cut and distinct. On the latter issue the jury were fully, fairly and properly instructed.

The decision in *Owen* v. *Dixon*, 162 Va. 601, 175 S. E. 41, is not controlling here. In that case Owen claimed damages for personal injuries sustained in an automobile accident. The jury returned a verdict for defendants. On review by this Court the case was reversed and remanded for a new trial on the ground that the lower court committed reversible error in permitting defendants to prove that plaintiff had received compensation under an insurance policy. This payment, defendants contended, was compensation in part for loss of time and injuries sustained. In reversing the case, we said: "In view of the admission of the evidence relating to the compensation received by plaintiff, it is impossible to determine from the verdict whether the jury intended to find that plaintiff had been fully compensated or that he was not entitled to recover by reason of his primary or contributory negligence."

In *Bardach Iron, etc., Co.* v. *Charleston Port Terminals*, 143 Va. 656, 675, 129 S. E. 687, the jury returned a verdict for defendant which was approved by the trial court. On review plaintiff contended that the trial court committed reversible error in admitting certain evidence bearing on the question of damages. The admission of the evidence

was held to be harmless error. Judge Crump, speaking for the Court, said:

"The evidence, therefore, bore only on the question of damages which should be allowed to the defendant under its plea, provided the jury found for the defendant under its plea of offset. It bore entirely upon the measure of damages in that respect. The jury having found that the defendant was not entitled to any damages under its plea, the admission of the letter is clearly harmless error."

The same contention that plaintiff makes in this regard was made in *Koontz* v. *Whitney*, 109 W. Va. 114, 153 S. E. 797, where the Court, speaking to the point, said: "It is the contention of the plaintiff's counsel that, had proper instructions been given (on the issue of liability), the jury would have awarded a greater amount of damages. It is difficult to perceive such a result. The questions of liability and damages, though generally questions for the jury, are distinct and separable. The jury was told to consider two questions: (1) Was defendant negligent? (2) If so, what are plaintiff's damages? The former question having been answered in the affirmative, the jury then assessed damages at $50.00."

However, after the West Virginia court had decided this question adversely to plaintiff's contention, it considered the question of the quantum of damages without reference to the erroneous instruction given on the question of liability and, by a divided court, reversed the case because the damages awarded were grossly inadequate.

Considering the case at bar as a whole we find no reversible error. The judgment is

*Affirmed.*