# Richmond

HARVEY WILLIAMS DINWIDDIE v. ROBERT DAVIS HAMILTON.

November 30, 1959.

Record No. 5001.

Present, All the Justices.

The opinion states the case.

*Edwin B. Meade* (*Meade, Tate & Meade*, on brief), for the plaintiff in error.

*John W. Carter* and *Charles E. Carter* (*Carter & Carter*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

Robert Davis Hamilton brought this action against Harvey Williams Dinwiddie for damages for personal injuries suffered by the

plaintiff in an automobile collision. On trial to a jury held on June 23, 1958, he recovered a verdict against the defendant for $2,500 which the court set aside on the ground that it was too small and ordered a new trial limited to the question of damages. The retrial was had on October 17, 1958, and resulted in a verdict for $8,000, on which the court entered judgment and we granted the defendant Dinwiddie a writ of error.

The defendant contends that the court erred in setting aside the first verdict as being inadequate and in entering judgment on the second verdict, which he says was excessive.

The accident occurred December 25, 1957, on Main street in the city of Danville. The plaintiff, Hamilton, driving his automobile with his wife and baby beside him, stopped for a red signal light at an intersection and had been there about a minute when his car was struck from behind by an automobile driven by the defendant, Dinwiddie. From the force of the blow plaintiff's head was jerked backward, then forward, and again backward, striking the doorpost of the car and rendering him unconscious for a time, and he was in a dazed condition until an ambulance arrived and he was taken to a hospital. The motion of his body from the impact broke the adjustment mechanism of the car seat and the steering wheel.

On the first trial the defendant admitted liability and the right of the plaintiff to recover compensatory damages in accordance with the instructions of the court on damages. None of the instructions given was objected to by either party.

The first question to be decided is whether the court erred in setting aside the first verdict as being inadequate, and on that question we look to the evidence on the first trial alone as it related to the plaintiff's injuries and their consequences. *Bostic* v. *Whited*, 198 Va. 237, 238, 93 S. E. 2d 334, 335; *Brann* v. *F. W. Woolworth Co.*, 181 Va. 213, 216, 24 S. E. 2d 424, 425.

The evidence offered by the plaintiff material to the present issue came from the plaintiff and his wife and two medical doctors and was to the following effect:

Prior to the accident the plaintiff had been in excellent health and worked regularly at a job with Dan River Mills which required considerable lifting. After the accident he was out of work for approximately 12 weeks before his doctor released him to return to work. Following the accident he remained in the hospital 18 days. During a substantial part of that time he suffered severe pain in his

neck and back region and severe headaches, taking large quantities of narcotics to relieve the pain. At the end of the 18-day period he was released from the hospital and stayed at home for approximately eight days, during which he went each day to the office of his physician, Dr. Pritchett. At the end of eight days he was suffering from pain, headaches and general nervous condition, and Dr. Pritchett sent him back to the hospital where he remained ten days and was then released but continued to suffer severe pains in the neck and back and to have severe headaches.

On March 17, 1958, Dr. Pritchett discharged him with instructions to return if he continued to suffer. He did not return for any further treatment but in about 12 days went back to work for his employer at a different job, the old one having been discontinued, and worked there continuously to the date of the trial, although he still took drugs to relieve his pain. His new job, which required lifting, aggravated the pain between his shoulder and neck.

Dr. Pritchett saw the plaintiff in the emergency room of the hospital soon after the accident. He said the plaintiff had received a severe whiplash injury and complained of severe pain in his neck, back, shoulders and head. He had no lacerations and no fractures or lung injury, although he spit up blood for a short time. During the first week in the hospital plaintiff was confined to his bed. He was allowed to go home on January 12 but there he could not sleep and his condition deteriorated. The doctor sent him back to the hospital on January 20 and discharged him ten days later. He did not then consider him well and treated him at his office. On March 17, 1958, he permitted plaintiff to go back to work as a matter of financial necessity and not because he thought he had recovered. He did not afterwards see the plaintiff until the day of the trial.

He thought plaintiff's difficulty would gradually subside for the most part, provided there was no new injury to his neck but that he would always be conscious that he had had an injury to his neck, which would be more susceptible to injury as a result of the accident because of scar tissue that would remain. His conclusion was that the plaintiff's only disability would be that he would have pain on excessive maneuvering of his neck or perhaps in bad weather, but there was nothing to incapacitate him from work although he would probably have muscle soreness and pain as a result of lifting heavy objects.

On March 29, 1958, Dr. Pritchett reported to plaintiff's counsel

that on March 17, 1958, when he last examined him, he thought the plaintiff was doing very satisfactorily, was free from all pain, and that all medications had been stopped, but that he might have pain in inclement weather or upon receiving a slight trauma to the neck. When he discharged plaintiff on March 17, 1958, he instructed him not to do unnecessary things that would hurt his neck, and he did not think plaintiff should put the muscles of his neck to the acid test.

Dr. Kinser, an orthopedic surgeon, first saw the plaintiff on June 12, 1958, eleven days before the trial. His findings were that the plaintiff's head and lungs were normal with no trace of pain in his chest, and the motion of his shoulders was normal. His cervical spine was normal with normal motion in all directions. The plaintiff complained of tenderness and pain on forward flexion of his spine, referable to the base of his neck. An x-ray showed a minimal wedging of the 7th and 8th thoracic vertebrae, which had existed before the accident. His impression was that the plaintiff had a rather severe sprain of the cervical spine which probably caused some aggravation or irritation of this old injury. He was having continued symptoms in the region of the mid-thoracic spine and still had headaches that could be the aftermath of the concussion at the time of the injury. He felt that the plaintiff was making a very satisfactory recovery from his injuries but that he was not entirely well.

He was of opinion that at sometime in his life plaintiff had suffered a back injury which had rendered him more susceptible to injury to the thoracic spine than a normal person. He further expressed the opinion that a whiplash injury such as the plaintiff had suffered is quite painful and that recovery is slow and protracted and difficult to predict; that there would be ultimate recovery but he could not predict how long it would take; that plaintiff needed further treatment and it might be advisable for him to wear a brace for his spine.

The plaintiff proved a wage loss due to his injury of $838.51; a loss of $34 in vacation pay, a hospital bill amounting to $648.80, drug bill $17.35 and Dr. Pritchett's bill $301; a total of $1,839.66.

The jury were instructed that in arriving at plaintiff's damages they should consider not only his loss of wages and expenses, but also whether his injuries were temporary or permanent and their effect on his enjoyment of life, the pain and suffering he had experienced, and specifically any aggravation of any pre-existing injury. The jury were of opinion that $2,500 was the proper amount of damage to

be allowed. The trial court thought that was too little. The issue is whether the conclusion of the jury or that of the trial court shall prevail.

It is a familiar and often repeated statement that there is no definite weight or measure for determining the proper compensation to be allowed for injuries caused by a wrong. It admits of "no other test than the intelligence of the jury, governed by a sense of justice." *Ward* v. *White*, 86 Va. 212, 220, 9 S. E. 1021, 1024. It is somewhat rare that courts are asked to set aside a verdict because it is too small. The much more frequent complaint is that it is too large. The adage that the jury should be just before being generous is usually alleged to have been applied in reverse. Whether the complaint is that the verdict is excessive or that it is inadequate, the right of the court to annul it is governed by the same principles.

"* * There is no measure of damages in cases of this kind, and there has not yet been discovered any standard by which to measure in dollars and cents the value of physical pain and suffering. It is a matter which must be left to the judgment and discretion of an impartial jury, and no mere difference of opinion of the trial judge, however decided, will justify an interference with their verdict, unless it appears from the record that the jury has been influenced by partiality or prejudice, or have been misled by some mistaken view of the merits of the case. * *." *E. I. DuPont Co.* v. *Taylor*, 124 Va. 750, 762, 98 S. E. 866, 870.

"* * The determination of the quantum of damages in this character of action is peculiarly within the province of the jury, but its authority to fix the amount of damages is not arbitrary or unlimited. Yet if the amount awarded is not so out of proportion to the injury and loss suffered as to evince prejudice, partiality, or corruption by the jury or show that it was actuated by a mistaken view of the merits of the case, then the award should not be disturbed. * *." *Williams Paving Co.* v. *Kreidl*, 200 Va. 196, 204, 104 S. E. 2d 758, 764. *Lilley* v. *Simmons*, 200 Va. 791, 797, 108 S. E. 2d 245, 249.

If the amount awarded is clearly out of proportion to the injury suffered, it may indicate that the jury were actuated by bias or prejudice, or that the evidence of the extent of the injuries was disregarded. Where the damages are either so excessive or so inadequate as to shock the conscience, and to warrant the conclusion that the jury has been influenced by passion or prejudice, or in some way has misconceived or misinterpreted the facts or the law, it is the

duty of the court to set the verdict aside. *C. D. Kenny Co.* v. *Solomon,* 158 Va. 25, 30-1, 163 S. E. 97, 98-9.

In *Drudge* v. *Cooper,* 190 Va. 843, 58 S. E. 2d 878, a verdict of $2,500 was allowed to stand although plaintiff's evidence of special damages for expenses and loss of time and earnings exceeded that amount, it appearing to the court that the verdict seemed to bear a reasonable relation to the damages suggested by the facts.

In *Glass* v. *David Pender Grocery Co.,* 174 Va. 196, 5 S. E. 2d 478, the plaintiff's injuries were serious and extensive. She was almost wholly incapacitated for eight months and would have to undergo a future operation, "spend weeks in a hospital, continue medical treatment and await a period of six to twelve months in the hope of a recovery which never will be complete." A verdict of $3,000 was set aside because it "bears no reasonable relation to the loss inflicted upon the plaintiff." It was there said:

"There is nothing in this case to show that the jury was actuated by prejudice, passion or corruption. Its verdict cannot be disturbed unless, in the light of all of the evidence, the award be so manifestly inadequate as to show very plainly that the verdict resulted from a misconception or misinterpretation of facts which should have guided the jury to a just conclusion." 174 Va. at 201, 5 S. E. 2d at 480-1.

In the present case there is no hint or suggestion that the jury were influenced by prejudice, partiality or corruption, nor that the amount of the verdict was due to a mistaken view of the merits of the case, unless such may be said to be established by the size of the verdict alone.

It is to be remembered that the plaintiff suffered no external injuries and most of the things of which he complains were subjective and their nature, extent and duration were largely matters of opinion. It is also true that the jury were not required to be governed by the aspect of the evidence most favorable to the plaintiff, who had the burden of proof. Dr. Kinser expressed the opinion that such an injury as plaintiff suffered is quite painful and that recovery is slow, protracted and difficult to predict, and that plaintiff needed further treatment and perhaps a brace. On the other hand, Dr. Pritchett, who had treated the plaintiff from the time of this accident, both in the hospital and in his office, almost every day as his bill indicates, testified that on March 17, 1958, when he permitted the plaintiff to go back to work, the plaintiff was then free of all pain, appeared to be

doing very satisfactorily, and all medications were then stopped. He then instructed the plaintiff that if he had further difficulty he should return for further treatment, but he did not see him again from that time until the date of the trial.

At the time of the trial the plaintiff was working full time on a regular job. He had normal motion in his shoulders and his cervical spine was normal with normal motion in all directions. He was present at the trial, testified in his own behalf, and the jury saw him, heard him, and observed his appearance, his manner, and his movements during the trial. They then fixed the amount of his recovery, which covered all the expenses and wage loss claimed by the plaintiff, and $660 more. There was evidence in the record which would have warranted a larger sum if the jury had so evaluated it. The verdict was small, smaller than the trial judge thought it ought to be, and smaller than a second jury on about the same evidence thought it should be, but it was a question on which reasonable minds could differ and we cannot say that it bears no reasonable relation to the damages suggested by the evidence in the case. It is not so small as to shock the conscience or so manifestly inadequate as to warrant a conclusion that it resulted from prejudice, partiality or corruption, or from some mistaken view of the merits of the case. It was within limits permissible to the jury under the evidence and it was error for the court to deny them their prerogative and set aside their verdict in this case.

Accordingly the verdict for $2,500 returned by the jury on the first trial is reinstated and judgment is now entered thereon for the plaintiff against the defendant, and all proceedings subsequent to that verdict are set aside and annulled.

*Reversed and final judgment.*