**Eva P. DE FOE, Appellant,**

v.

**Benjamin DUHL, Isidore Suchman, Paul Gaier, and Sol Berger, Appellees.**

**No. 8192.**

United States Court of Appeals
Fourth Circuit.

Argued Nov. 18, 1960.

Decided Jan. 5, 1961.

Eva P. DeFoe, Pro Se, and Henry St. J. FitzGerald, Alexandria, Va. (Tolbert, Lewis & FitzGerald, Arlington, Va., on brief), for appellees.

Before HAYNSWORTH and BORE-MAN, Circuit Judges, and HARRY E. WATKINS, District Judge.

PER CURIAM.

In this tort action for personal injuries, the plaintiff appeals from a judgment in her favor and from the denial of her motion for a new trial, primarily upon the ground that the damages fixed by the verdict were inadequate.

The plaintiff fell down some outside steps leading from the laundry of the apartment building in which she was one of the tenants. She testified the outside lights were out, her theory being that the fall was caused by the negligence of the owners in permitting the outside lights to be and remain unlit. Her theory was accepted by the jury, for it

brought in a verdict in her favor for $699.

While two lay witnesses testified that on the day after the fall they saw the plaintiff walk up and down stairs without apparent need of assistance, or noticeable limp, and that they observed no evidence of any injury, the plaintiff claimed that she sustained a concussion, multiple contusions, bruises, strained muscles and ligaments, acute cervical strain, acute thoratic [sic] strain, severe headache and a sprained left ankle. On the second day after the fall, she was examined by an orthopedic surgeon, who testified that she was then complaining of pain in her left ankle, her left knee, her back and chest. This same doctor saw her a second time two days later when she was nervous and tense, and complaining of pain in her neck, upper back, left ankle, left arm and head. He recommended hospitalization, and she was hospitalized for thirteen days, during which time she received heat and massage therapy, and was at times put in traction. X-rays revealed no broken bones and the doctor's only objective findings were of bruises on the left ankle, left knee, left leg and left hip, and of soreness to touch on the neck, upper back, chest, left ankle and left upper arm, and some restriction in the motion of the neck. The X-rays disclosed some pre-existing arthritic changes, but this surgeon was of the opinion that the pain, of which she complained, was caused by the fall rather than the arthritis.

More than a year after the fall, the plaintiff consulted a neurosurgeon. He took X-rays of the skull, which showed no fracture, and an electroencephalogram was normal. He thought that the headaches, of which she complained, were referable to a concussion, which the plaintiff told him she had sustained, and that pain in the cervical spine was a residual of a strain superimposed upon arthritis.

Some nineteen months after the accident she consulted a second orthopedic surgeon, a Dr. Jackson. He found a slight limitation of flexion of the cervical

spine to the left and to the right and slight limitation of rotation of the head to the left and to the right. He also found slight tenderness to heavy percussion over the dorsal spine and to compression of the left rib cage. He was of the opinion that she would continue to have some symptoms of the osteoarthritic changes which he had noted. He saw her again approximately two and one-half months later, after which he expressed the opinion that her limitations of motion and her pain were the result of pre-existing arthritic changes, to which the fall made no contribution.

The plaintiff raised the question of the adequacy of the award by a motion in which she asked the District Court to set aside the verdict and to reassess the damages or, alternatively, to grant a new trial. The District Judge denied the motion. Since the amount of the damages, ordinarily is not reviewable, we are limited to a determination whether there was a clear abuse of the discretion lodged in the District Court.[1] We find no such abuse of discretion.

The plaintiff proved out-of-pocket medical expense of $624.30. Though she now contends there were other unproved expenses which would increase the total out-of-pocket expense to an amount in excess of the verdict, the jury could act only upon the basis of the evidence before it. Moreover, in view of the testimony of Dr. Jackson that some of her complaints were not attributable to any injury sustained in the fall, the jury was not required to find that all of the $624.30 was damage proximately resulting from the injury.

In view of the conflict in the medical testimony, the limited nature of the objective findings of the doctors and the testimony of the laymen, who observed her going up and down stairs the day after her fall, we think the District Court properly could find that the amount of the verdict was well within the discretion lodged in the jury. As the Supreme Court of Appeals of Virginia said in Williams Paving Company v. Kreidl, 200 Va. 196, 104 S.E.2d 758, 764:

" * * * The determination of the quantum of damages in this character of action is peculiarly within the province of the jury, but its authority to fix the amount of damages is not arbitrary or unlimited. Yet if the amount awarded is not so out of proportion to the injury and loss suffered as to evince prejudice, partiality, or corruption by the jury or show that it was actuated by a mistaken view of the merits of the case, then the award should not be disturbed. * * *."

The same principles govern the right of the court to set aside a verdict when it is attacked for inadequacy as when it is attacked for excessiveness. Dinwiddie v. Hamilton, 201 Va. 348, 111 S.E.2d 275; Chesapeake & O. Ry. Co. v. Arrington, 126 Va. 194, 101 S.E. 415. The verdict here is not so shockingly low in light of the conflicts in the testimony as to lead to the conclusion that it was based upon passion or prejudice or some misconception of the facts or of the law. E. I. Du Pont De Nemours & Co. v. Taylor, 124 Va. 750, 98 S.E. 866; Pointer v. Green, 193 Va. 757, 71 S.E. 2d 155; Drudge v. Cooper, 190 Va. 843, 58 S.E.2d 878; Glass v. David Pender Grocery Co., 174 Va. 196, 5 S.E.2d 478.

Mrs. DeFoe also complains that Dr. Jackson was allowed to testify. As we have noted, she consulted him in August of 1959. On the 3rd of November 1959, the Attorney for the defendant informed the attorney who represented Mrs. DeFoe in the trial court, that he had made a tentative appointment for her to see Dr. Jackson on November 5. Her attorney did not know that Mrs. DeFoe had been to Dr. Jackson, and agreed that he would call her and request that she report to the doctor's office to be examined on behalf of the defense on November 5. Her attorney reached her by telephone on Novem-

---

[1]. Virginian Ry. Co. v. Armentrout, 4 Cir., 166 F.2d 400, 4 A.L.R.2d 1064.

ber 4, and Mrs. DeFoe, without disclosing to her own attorney that she had consulted Dr. Jackson, agreed to go to be examined by him on the 5th. She kept the appointment on November 5, expecting, so the court below was informed, that Dr. Jackson would disqualify himself and refuse to examine her. When she came into his office, Dr. Jackson recognized her as a former patient, but he made some examination of her, reported the results of his examination on the two occasions to the attorney for the defendant and testified at the trial.

Virginia by statute[2] has provided that, without the consent of the patient, a physician shall not be required to testify in any civil action with respect to any information he has obtained in examining or treating a patient, if the information is necessary to the performance of his professional duties, but there is an express exception when the physical or mental condition of the patient is at issue in the action. Then, and in any other case in which the court finds disclosure necessary to the proper administration of justice, no such information is privileged and disclosure may be required. The District Court properly applied the express exception to the limited statutory privilege for such communications and required the doctor to testify.

Mrs. DeFoe, who prosecuted this appeal on her own behalf, earnestly complains of a number of other matters, most of which are collateral, but all of which we have considered in our examination of the record and of the other papers submitted by her. Our examination discloses no reversible error.

Affirmed.

2. "§ 8–289.1. Communications between physicians and patients.—Except at the request of, or with the consent of, the patient, no duly licensed practitioner of any branch of the healing arts shall be required to testify in any civil action, suit or proceeding at law or in equity respecting any information which he may have acquired in attending, examining or treating the patient in a professional capacity if such information was necessary to enable him to furnish professional care to the patient; provided, however, that when the physical or mental condition of the patient is at issue in such action, suit or proceeding or when a judge of a court of record, in the exercise of sound discretion, deems such disclosure necessary to the proper administration of justice, no fact communicated to, or otherwise learned by, such practitioner in connection with such attendance, examination or treatment shall be privileged and disclosure may be required. This section shall not be construed to repeal or otherwise affect the provisions of § 65–88 relating to privileged communications between physicians and surgeons and employees under the Workmen's Compensation Act; nor shall the provisions of this section apply to information communicated to any such practitioner in an effort unlawfully to procure a narcotic drug, or unlawfully to procure the administration of any such drug."