813 F.2d 1228
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Leonard MOULTRIE, as Administrator of the Estate of Sandra
D. Moultrie, deceased, Plaintiff-Appellant,
v.
HARRIS LAKE INC., Fraser Harlake, Inc., Airco, Inc., BOC
Group, Inc., Defendants-Appellees.
 No. 86-1167.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 8, 1987.
Decided March 10, 1987.
 
 1
 Before WIDENER and HALL, Circuit Judges, and SENTELLE, United States District Court Judge for the Western District of North Carolina, sitting by designation.
 
 
 2
 O. Fayrell Furr, Jr. (Stanley Douglas Copeland; Law Office of O. Fayrell Furr, Jr., on brief), for appellant.
 
 
 3
 Robert Wightman Dibble, Jr. (Wilmont B. Irwin; McNair Law Firm, P.A., on brief), for appellees.
 
 SENTELLE, District Judge:
 
 4
 This case arose as a wrongful death action brought by the surviving husband of a young woman who died as a result of the improper administration of anesthesia during surgery. In this action, the defendant was the manufacturer of an anesthesia machine. Plaintiff alleged, and the jury found, that negligence in the manufacture and design of the machine was a proximate cause of decedent's death. After the return of the verdict of $45,000, plaintiff moved to set aside the damages as inadequate.[1] Plaintiff appeals from the trial court's denial of that motion and further alleges as error the admission of certain evidence which plaintiff contends could have prejudiced his case as to damages below. Finding that the trial court committed reversible error in neither of these regards, we affirm.
 
 
 5
 Plaintiff first argues that the damages award is simply inadequate as a matter of law in view of what he describes as the "uncontroverted facts and circumstances establish[ing] that the damages sustained were far in excess of the verdict." He argues, citing Toole v. Toole, 260 S.C. 235, 195 S.E.2d 389 (1973), that "[W]here the verdict is grossly inadequate, a new trial may and should be granted for the same reasons and for the same principles as govern when a verdict is similarly excessive." Id. at ----, 195 S.E.2d at 390. As an abstract proposition of law, plaintiff is no doubt correct. This law, however, does not compel reversal in the instant case. Plaintiff's evidentiary argument is based on the testimony of economist Dr. Oliver Wood to the effect that the total financial loss to the beneficiary of Mrs. Moultrie's estate was $280,579. He further argues that this evidence was not controverted by any other economic evidence, did not include any non-economic factors,[2] and, therefore, the jury's verdict simply cannot stand in light of the record. However, as the trial court quite properly instructed the jury, they were free to believe all, part or none of what any witness, including expert, had to say. Cf. E. Devitt and C. Blackmar, Federal Jury Practice and Instructions, Sec. 73.01 (1977). In this case, a rational jury could have freely disbelieved much of the testimony of the economist or given it little weight. The $280,579 figure to which wood testified was composed of two component parts. First, he estimated that her earnings pre and post-trial minus her own personal living expenses over the course of her life expectancy would have equalled $98,723. To this he added $181,856 which he described as the market value of the "cost of replacing...in the marketplace her 'family services around the home'." It does not defy rationality to think that a jury could have found that a woman never employed at higher than the Federal minimum wage in her life would not during her life expectancy have had earnings which greatly exceeded her personal consumption. Further, the same jury cannot be said to be irrational if it does not readily believe that her surviving husband would have gone to the marketplace to hire someone for a range of services which Dr. Wood described as including "cooking, cleaning, shopping, sewing, caring for pets, and washing the car." Furthermore, as noted above, the measure of damages under South Carolina law is the loss to the beneficiary, not the loss to the estate, and there was no evidence before the jury in this case that Mrs. Moultrie shared her earnings with plaintiff. Therefore, it may well be that the jury awarded its $45,000 only for the non-economic factors recognized under South Carolina law having found that there was no economic loss to the beneficiary.
 
 
 6
 While we cannot know the process of the jury's deliberation, we do know that the law of this Circuit is:
 
 
 7
 A trial court, in its discretion, may set aside a verdict and grant a new trial if the "verdict is so excessive that it cannot be justified by anything in the record or of which the Court can take judicial notice." ...Our review of the trial court's decision, however, "is limited to ascertaining whether the decision amounts to an abuse of discretion." Klein v. Sears Roebuck & Co., 773 F.2d 1421, 1428 (4th Cir. 1985). (citations omitted.)
 
 
 8
 The same principles govern when a verdict is attacked for inadequacy as when for excessiveness. DeFoe v. Duhl, 286 F.2d 205 (4th Cir. 1961). Indeed, this Court has previously noted in excessiveness cases that the "abuse of discretion" standard dictates that the trial judge's ruling will stand on the motion to set aside except "where the verdict is not merely excessive but 'monstrous'..." Simmons v. Avisco, 350 F.2d 1012, 1020 (4th Cir. 1965). In this case, in light of the evidence before the jury and the proper instruction which they were offered, we simply cannot say that the verdict, while low, is "monstrously" inadequate; and we, therefore, affirm the trial judge's ruling.
 
 II.
 
 9
 Plaintiff further contends that the trial below contained reversible error prejudicial to plaintiff on the damages issue in that the judge admitted evidence that plaintiff had slapped decedent once two years before her death. Plaintiff contends that it was irrelevant or, if relevant, it was inadmissible under Rule 403, FRE, and should have been excluded as having an unfair prejudicial effect substantially outweighing any probative value. While we agree that the probative value of the evidence was slight, we cannot agree that its admission constituted reversible error. The question came in cross-examination of the plaintiff after his strong testimony concerning his good relationship with his wife. The testimony concerning the slap consisted entirely of the following exchange:
 
 
 10
 Q. All right, sir. Let me ask you a question, Mr. Moultrie. Did you ever hit your wife?
 
 
 11
 A. Yes, sir, one time.
 
 
 12
 Q. One time. All right, sir. Thank you.
 
 
 13
 MR. DIBBLE: No further questions.
 
 
 14
 While the probative value of a single slap as to the damages element of lost society, deprivation, and the like is not great, neither, it would seem, is the potential prejudice. Cf. Basham v. Terry, 199 Va. 817, 102 S.E.2d 285 (1958). The trial judge, whose duty it is to weigh the probative value against the potential prejudice in the first instance, and who is in a better position that we to judge its effect, in fact indicated in ruling on the motion to set aside below that the evidence of a single "nominal-type slap" in the course of several years marriage appeared to him to have an effect on the jury more beneficial to plaintiff than defendant. on this question, "[G]reat deference must be given to the district judge who saw and heard the evidence," United States v. Weir, 575 F.2d 668, 670 (8th Cir. 1978), and this is certainly not a case in which we should depart from that deferential practice.
 
 
 15
 In summary, we find nothing raised by appellants warranting a reversal of the court below and, therefore, affirm.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 Before the trial of this action, plaintiff had settled with the hospital and other medical defendants in the amount of $300,000
 
 
 [2]
 South Carolina's measure of damages under its wrongful death statute, Sec. 15-51-40, Code of Laws of South Carolina (1976), is "the damages sustained by the beneficiary from the death." In addition to economic loss these include "such mental shock and suffering, wounded feelings, grief and loss, loss of companionship and deprivation of the loss and comfort of the intestate's society as the beneficiary may have sustained as the result of the death of the intestate. Lucht v. Youngblood, 266 S.C. 127 1221 S.E.2d 854, 859 (S.E. 1976). (Citations omitted.)