# CIRCUIT COURT OF CULPEPER COUNTY

Chase

    v.

Thompson
and P. M. Transport, Inc.

Case No. (Law) 97-L-12

December 28, 1998

By Judge Perry W. Sarver

This matter is before the court on Defendants' motion to set aside the jury's verdict and order a new trial on the issue of damages, or, in the alternative, for a remittitur on the grounds that:

> [t]he jury's verdict, in favor of the plaintiff for the sum of $11,600,000.00, is so excessive as to warrant the conclusion that the jury was influenced by passion or prejudice, or in some way misconceived or misinterpreted the facts and were motivated by sympathy for the Plaintiff.

The Court has considered the memoranda of counsel filed herein and their oral argument before the Court on December 3, 1998. I am of the opinion, for the reasons stated herein, that the verdict is excessive, accordingly there are two available options:

(1) Set aside the verdict and order a new trial, Va. Code § 8.01-383, or,

(2) Order a remittitur, Va. Code § 8.01-383.1.

### Facts

Plaintiff, Chase, was sitting in his truck at the Stevensburg, Va., Post Office on the morning of January 16, 1996, reading his mail. Defendant, Thompson, was operating a semi-tractor trailer, owned by Defendant, P. M.

Transport, Inc., in a westerly direction on U.S. Rt. 3, east of Culpeper and following a pickup truck. The truck slowed down to make a left hand turn into the Stevensburg Post Office lot. Neither Thompson not the operator of the pickup were speeding. Thompson was charged with and pleaded guilty to defective brakes and following too close. Thompson had three options after discovering his brakes were insufficient to stop his tractor trailer, (1) to continue on and hit the pickup, (2) turn right and into a snow bank and field, of which he had a somewhat obscured view, or, (3) turn to the left and into the parking lot of the Post Office and adjoining convenience store, which he did striking Chase's vehicle. Chase was thrown from his truck, ultimately coming to rest under Defendant's truck. He suffered head injuries, a fractured pelvis, broken ribs, and a broken hip. The injuries required intensive hospitalization, rehabilitation, including a long recovery period at his home, and there may be a need for hip surgery in the future. The injuries were painful and Chase continues to suffer pain on a daily basis.

Chase, sixty-one years old, married for approximately thirty-eight years, with four adult children, retired from the United States Army in 1975, with the rank of Major, on disability. He first lived in Prince William County on a small farm and then moved to a farm in Culpeper County. He has been active in civic affairs and has served as a member of the Board of Supervisors for 16 years having been re-elected to his present term, subsequent to the accident, notwithstanding the disabling injuries received in the accident.

Chase is a graduate of the United States Military Academy and received a Masters Degree from the University of Virginia in Urban Planning subsequent to his retirement from the military.

He is described as an avid farmer, raising beef cattle, with a strong interest in community affairs. Due to the injuries incurred in the accident (including a 60% permanent disability from the broken hip, which will ultimately require a hip replacement operation), he is no longer able to raise cattle or perform the normal duties required by farming operations. While he claims no economic loss from farming, he is deprived of the joy and satisfaction of continuing this advocation, which he has enjoyed since his retirement from the military.

He feels that he can no longer perform his duties as a member of the Board of Supervisors because of the lasting effects of the head injuries causing memory loss and inability to remain focused on subject matter before him and to concentrate on such subject matter. He is unable to function in meeting type settings which requires him to follow and comprehend the proceedings before the Board. He is unable to shift his attention between participants at board meetings. He has difficulty functioning in crowds at church or at social functions.

Chase stated that the simplest tasks, such as balancing his checkbook, have become major undertakings with which he can no longer cope.

The severity of his injuries are related on pages 171 and 183-184 of the October 21, 1998, Transcript by Arthur L. Trask, M.D., the treating physician at Fairfax Hospital. Dr. Trask, among other things, stated that Chase suffered a contusion of the brain showing that he had a significant injury to his brain. Chase had difficulty talking with his doctors and it was obvious that his mental capacities were not quite what they should be.

The lasting affects of the brain injuries are related by Stephen N. Macciocchi, Ph.D., a neuropsychologist, who treated Chase while he was in the inpatient rehabilitation program at the University of Virginia. (Oct. 21, 1998, Transcript, beginning at p. 15.) Chase at the time of admittance into the program, on or about February 15, 1996, was described as being "confused, at times and was really — had great difficulty maintaining a coherent stream of thought". "He had difficulty remembering, recalling things. He was disoriented for where he was, and his thinking was very disorganized." (Transcript, p. 22.) "At the time of discharge, he continued to evidence problems with memory and recalling information and organizing his thinking." (Transcript, p. 24.)

Dr. Macciocchi further testified (Transcript, p. 27) that there was some improvement initially, "probably over the first six months or so, then I think there was very little - minimal change after that, which is fairly normal for a brain injury in terms of you get a lot of recovery in the first six months and then less so after that."

### Holding

The Supreme Court advises in *Smithey v. Sinclair Refining Co.*, 203 Va. 142, 145, (1961), that:

> In this Commonwealth we have, by decisions so numerous and so familiar that they require no citation, sought to uphold the sanctity of the jury verdict. It is our duty to sustain a verdict that has been fairly rendered.
>
> In personal injury cases, where the action merely sounds in damages and where there is no rule for measuring such damages, the amount to be awarded is left largely to the discretion of the jury. The verdict of the jury, arrived at upon competent evidence and controlled by proper instructions, in an impartially conducted trial, has always been held to be inviolate against disturbance by the courts. *Farish &*

*Co. v. Reigle,* 11 Gratt. (52 Va.) 697, 722; *Ward v. White,* 86 Va. 212, 220, 9 S.E. 1021, 1024; *E. I. DuPont Co. v. Taylor,* 124 Va. 750, 762, 763, 98 S.E. 866, 870; *Dinwiddie v. Hamilton,* 201 Va. 348, 352, 353, 111 S.E.2d 275, 277, 278 ... .

But this is not to say that the verdict of a jury is not subject to the control of the courts. A healthy administration of justice requires that, in a proper case, the courts must take action to correct what plainly appears to be an unfair verdict. This authority is an ancient and accepted part of the common law ... . [it] has been recognized by the legislature in its enactment of Code § 8-224 [now 8.01-383], relating specifically to the power of the court to award a new trial where the damages awarded by a jury are either too small or excessive, and Code § 8-350 [now 8.01-383.1] relating to the procedure to be followed in protesting and seeking an appeal from a court's action in ordering a remittitur ... .

If the verdict merely appears to be large and more than the trial judge would have awarded had he been a member of the jury, it ought not to be disturbed, for to do so the judge must then do what he may not legally do, that is, substitute his judgment for that of the jury. *Aronovitch v. Ayres,* 169 Va. 308, 328, 193 S.E. 524, 531; *Simmons v. Boyd,* 199 Va. 806, 811, 812, 102 S.E.2d 292, 296.

But if it appears that the verdict is so excessive as to shock the conscience of the court and to create the impression that the jury has been influenced by passion, corruption or prejudice, or has misconceived or misunderstood the facts or the law, or if the award is so out of proportion to the injuries suffered to suggest that it is not the product of a fair and impartial decision, then it becomes the plain duty of the judge, acting within his legal authority, to correct the injustice. *Chesapeake & O. Ry. v. Arrington,* 126 Va. 194, 217, 101 S.E. 415, 423, *cert. denied* 255 U.S. 573, 41 S. Ct. 376, 65 L. Ed. 792; *C. D. Kenny Co. v. Solomon,* 158 Va. 25, 30, 31.

*Id.* at 145-46.

As the Court stated in the course of the trial and at the conclusion of Chase's case, when striking the evidence as to his claim for punitive damages, there was no question in the Court's mind that the Defendants were guilty of negligence; however, their negligence did not rise to the level of willful or wanton misconduct so as to support a punitive damages claim.

Chase suffered extensive injuries, as already outlined, incurring medical expenses of approximately $126,000. The jury was instructed (without

objection) that it could award damages for: bodily injuries; physical pain and mental anguish, past and future; disfigurement, etc.; any inconvenience caused in the past and that probably will be caused in the future; medical expenses. (Instruction 15.)

There was no claim for loss of income.

Chase suffered extensive injuries to his hip, pelvis, ribs, and to his head, these injuries were permanent with respect to the hip and head injuries. The Court does not downplay or minimize the extent of his injuries and the fact that it is unlikely that his condition with respect to his cognitive abilities, his ability to concentrate, reason, comprehend and remember will improve. His quality of life has truly been diminished as a result of the accident.

The parties cited a number of cases in their post trial memoranda in support of their arguments. Some of the cases involving even more severe injuries and loss of income, quality of life, pain, suffering, and mental anguish than the subject case and awarding greater damages in some instances and in some lesser sums. While of interest and instructive to some degree, the Court believes that each case must be decided based upon its own particular facts. The Court does note that in *Hoar v. Great Eastern Resort Management, Inc.*, 256 Va. 374 (1998), that the brain damages to Thomas Hoar were so severe that he was rendered incompetent and unable to testify at trial and the jury returned a verdict of $6,170,563.00. The amount of the damages was not appealed. Thus the injuries appeared to be more severe than in the subject case but the award substantially less.

Considering the injuries sustained by Chase, his pain, mental anguish, past and future, and suffering, their effect on the quality of his life, the inconvenience, including loss of quality of life, and the medical expenses incurred by him, the verdict fails to bear a reasonable relationship to the damages disclosed by the evidence and on which the jury was instructed, i.e., Instruction 15.

The award does shock the conscience of the Court and it is not simply a situation in which the sum awarded is more that the Court would have awarded, which is clearly prohibited by case law. The Court has a substantial concern that the jury's decision was a result of an attempt by the jury to punish Defendants for their negligence (rather than to compensate Chase, as instructed by the court) and a disregard of Instruction 16, instructing in part, that the jury must not base its verdict upon sympathy or bias. At the very least, there was a failure by the jury to understand the law given to them in the instructions. The verdict also indicates that it was not the product of a fair and impartial decision.

I have considered both of the applicable Code sections and order a remittitur pursuant to Va. Code § 8.01-383.1 and order that Chase remit the sum of $7,000,000.00 (for a verdict of $4,600,000.00) or submit to a new trial on the sole issue of damages.