SILAS W. BRADNER

V.

JAMES D. MITCHELL, SR.

Record No. 841906

November 25, 1987

Present: All the Justices

A. L. Philpott; David A. Furrow (L. Dale McGhee; T. Keister Greer; Philpott & McGhee; Greer & Greer, on brief), for appellant.
No brief or argument for appellee.

RUSSELL, J., delivered the opinion of the Court.

The controlling question in this appeal from a plaintiff's judgment in a civil assault-and-battery case is whether the court erred in refusing to set aside the jury verdict on the ground of inadequacy of damages. Because the plaintiff prevailed on the issue of liability, the facts will be summarized in the light most favorable to him.

On June 24, 1978, Silas W. Bradner was a guest at an outdoor barbecue and picnic held on a farm in Franklin County. James D. Mitchell, Sr., a fellow guest, told others present of a grievance he had against Bradner, saying, "I'll kill the son-of-a-bitch." Later, Bradner got into a heated argument with Mitchell's son, James, Jr. They were "right up in each other's face, cussing each other." Bystanders separated the two before any blows could be struck, and held them six or seven feet apart. At that moment, Mitchell, who had not been present during the argument between Bradner and his son, ran up behind Bradner holding a piece of heavy galvanized pipe, approximately five feet long. He swung the pipe, striking Bradner in the head. Bradner, restrained by his friends, did not see the approaching blow and had no opportunity to dodge it. He fell to the ground on his face, unconscious.

A rescue squad vehicle took Bradner to a hospital in Rocky Mount, but he was kept there only briefly and was transferred to Roanoke Memorial Hospital. He recovered consciousness in the intensive care unit on the following day.

In March 1980, Bradner filed this action against Mitchell to recover damages for assault and battery. In a pretrial motion filed in 1982, Bradner stated that Mitchell had been indicted by the grand jury for malicious wounding, had been tried by a jury in the same court, and in October 1978 had been convicted and sentenced for assault and battery arising out of the same facts on which this action at law was based. Bradner argued that Mitchell was collaterally estopped to deny or to relitigate the facts upon which he had been convicted in the criminal case. He moved the court to treat those facts as proved, to regard the issue of liability as foreclosed, and to submit the case to the jury on the issue of damages alone. The court denied the motion and, over Bradner's objection, submitted the case to the jury on both issues. Bradner assigns error to this ruling, but because the jury resolved the issue of liability in his favor, it is now moot.[1] We therefore confine ourselves to the sole remaining question on appeal, the adequacy of the verdict.

The jury returned a verdict for the plaintiff in the amount of $4,000.00 as compensatory damages. The jury awarded no punitive damages, although the court's instructions would have permitted such an award. Bradner moved the court to set the verdict aside as inadequate and to award a new trial limited to the issue of damages. The court denied the motion and entered judgment on the verdict.

On appeal, Bradner points out that the verdict exceeded his proved special damages by merely $42.65. This, he argues, constitutes inadequacy as a matter of law because the jury plainly failed to take into consideration all the elements of damages included within the court's instructions.

In *Glass* v. *David Pender Grocery Co.*, 174 Va. 196, 5 S.E.2d 478 (1939), a plaintiff was injured by a fall in a grocery store which resulted from stepping into a small hole in the flooring. She recovered a verdict of $3,000 which the trial court refused to set

---

[1] The trial court's ruling on the question of the offensive use of the doctrine of collateral estoppel correctly foreshadowed the holding of this Court in *Selected Risks Insurance Co.* v. *Dean*, 233 Va. 260, 355 S.E.2d 579 (1987), decided after the trial below.

aside as inadequate. Liability was not in issue and there was no controversy with respect to the nature and extent of the plaintiff's injuries. We reversed the judgment, and remanded the case for new trial limited to the issue of damages, noting that the plaintiff's special damages amounted to nearly $1,000, that a further expenditure of another $1,000 would be required for her treatment, and that she would thus receive only $1,000 as compensation for her considerable pain, suffering, worry, impairment of working capacity, and permanent partial disability. We said:

> Notwithstanding the weight and effect which has been given to the verdict of a jury in cases involving damages for personal injuries and the fact that no standard measure of damages can be arrived at for the pain and suffering of an individual, the finding of a jury is still subject to the control of the courts.
>
> Each case must be considered on its own merits and in view of the peculiar facts of that case. If the amount of the verdict returned bears no reasonable relation to the damages suggested by the facts in the case, and is manifestly out of line and at variance with the facts, courts must exercise control in the interest of fairness and justice.

*Id.* at 201-02, 5 S.E.2d at 481 (citations omitted); *see also De-Wald* v. *King*, 233 Va. 140, 354 S.E.2d 60 (1987) (special damages uncontroverted in action to recover for personal injuries in tort case; verdict in approximate amount of special damages held inadequate as ignoring pain, disfigurement, etc.); *Rome* v. *Kelly Springfield*, 217 Va. 943, 234 S.E.2d 277 (1977) (special damages uncontroverted in action to recover for personal injuries in breach of warranty case; verdict in exact amount of special damages held inadequate as ignoring pain, disfigurement, etc.).

On the other hand, in *May* v. *Leach*, 220 Va. 472, 260 S.E.2d 456 (1979), we refused to set aside on the ground of inadequacy a verdict which fell thirty cents short of compensating the plaintiff for his proved special damages arising out of injuries received in an automobile collision, even though some degree of pain and disability was established by the evidence. We noted that the record "not only lacks substantial evidence of the plaintiff's injuries but it also raises serious questions concerning the time lost from work and the amount spent for medical expenses." *Id.* at 474, 260

S.E.2d at 457. We quoted from *Brown* v. *Huddleston*, 213 Va. 146, 147, 191 S.E.2d 234, 235 (1972):

'From the evidence, the jury was entitled to find that the plaintiff had not been injured as seriously as she claimed. The jury was also justified in believing that only a portion of the special damages was reasonably related to the accident. This being so, the verdict cannot be disturbed on the ground that it was inadequate.'

*May*, 220 Va. at 474, 260 S.E.2d at 457; *see also Doe* v. *West*, 222 Va. 440, 281 S.E.2d 850 (1981) (evidence of special damages controverted and incomplete; verdict which appeared to be in exact amount of claimed lost wages could not be disturbed).

The distinction between *Glass, Rome,* and *DeWald,* on one hand, and *Brown, May,* and *Doe,* on the other, lies in the differing quality of the plaintiff's evidence of special damages. Where that evidence is uncontroverted and so complete that no rational fact-finder could disregard it (as it was in *Glass, Rome,* and *DeWald*) it must be considered as a fixed, constituent part of the verdict.[2] When the remainder of the award consists of an amount which appears to the court insufficient to compensate the plaintiff for such non-monetary elements of damages as pain, suffering, deformity, loss of working capacity, and the like, where such are proven, the verdict should be set aside as inadequate.

On the other hand, where the plaintiff's evidence of special damages is controverted, doubtful as to nature and extent, or subject to substantial question whether attributable to the defendant's wrong or to some other cause, as was the evidence in *Brown, May,* and *Doe,* then neither the trial court nor we, on appeal, can say that the plaintiff's special damages constituted any fixed part of the jury's verdict. In such a case, a rational fact-finder might properly find the plaintiff entitled to considerably less than the amount claimed as special damages, rendering it impossible for the court to determine what amount might have been awarded for pain, suffering, and other non-monetary factors. In

---

[2] We have repeatedly held that although a trier of fact must determine the weight of the testimony and the credibility of witnesses, it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case. *Cheatham* v. *Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984).

such a case, the verdict cannot be disturbed on a claim of inadequacy.

Therefore, there is no conflict between the two lines of authority represented by *Glass, Rome,* and *DeWald,* on one hand and by *Brown, May,* and *Doe* on the other. The authority applicable to a given case depends upon the plaintiff's proof of special damages. We must, therefore, examine the plaintiff's evidence of special damages in this case to determine into which category it falls.

Bradner testified that he was confined in the hospital for two days following the assault, during which time a wound on his head was sutured, leaving a scar which he showed to the jury. He missed one month (160 working hours) from his work as a state employee. He testified that his two upper front teeth were loosened by the fall on his face, and that they were subsequently removed by a dentist, who replaced them with a partial plate. In addition, he testified that his nose was injured by the fall. He said that this injury was continuously painful, and that it resulted in severe earache. His physician recommended immediate surgery to relieve the pain, but Bradner "put it off" for a year because he had "suffered so much and had been out of work." In June 1979, he returned to Roanoke Memorial Hospital where he submitted to nasal surgery. He was confined to the hospital for four days on that occasion, and missed an additional two weeks (80 hours) of work.

Bradner's special damages were itemized on a written summary that was admitted into evidence without any objection. It showed medical expenses amounting to $2,082.35 and lost wages amounting to $1,875.00, for a total of $3,957.35, just $42.65 less than the jury's verdict. Corroborative hospital bills and leave-of-absence records from his employer were also introduced. Bradner was not cross-examined with respect to any of his claimed special damages, and the defense offered no evidence to controvert them.

Bradner also read into evidence the depositions of Edgar N. Weaver, M.D., a neurosurgeon who treated him in the intensive care unit at Roanoke Memorial Hospital for brain concussion and the head wound; Marvin C. Winn, D.D.S., a dentist who removed his two central incisors and made a partial plate to replace them; and James P. King, Jr., M.D., an otolaryngologist who performed a nasal septoplasty on him in 1979. In cross-examining Drs. Winn and King, the defense questioned the causation of Bradner's injuries. Dr. Winn admitted that Bradner had suffered for years from

serious periodontal disease which caused a loosening of his teeth, that he had previously lost five teeth from that cause, and that he would ultimately lose most, if not all, his teeth as a result. On direct examination, Dr. Winn testified that Bradner's two central incisors were so loose that they had to be removed. The left incisor was interfering with Bradner's chewing and with his speech. He said:

[Q.] From your observation and examination could you determine whether they came loose as result of a blow or just naturally came loose?

[A.] Well, I think I'd have to be very candid in answering that question because Mr. Bradner does have a gum condition that causes the teeth to loosen, but it's very possible that having received a blow to his head or some way, it could have loosened those teeth further.

On cross-examination, Dr. Winn testified:

[Q.] [Y]ou're not able to state with any medical certainty whether a trauma caused the looseness of the two teeth or whether this disease caused it or whether it was a combination of both. Is that a fair statement?

[A.] I would certainly think a fair statement would be that it was a combination of both . . . .

██ The foregoing constitutes the only evidence in the record concerning the causation of Bradner's loss of teeth. It is axiomatic that a defendant who causes injuries to a plaintiff with a preexisting condition must take the plaintiff as he finds him. Although not responsible for the preexisting condition itself, he is liable for any exacerbation of it caused by his tortious conduct. *Ragsdale* v. *Jones*, 202 Va. 278, 282-83, 117 S.E.2d 114, 118 (1960). Thus, there was no credible evidence from which a rational fact-finder could have found Bradner's loss of teeth so unrelated to Mitchell's conduct as to exonerate Mitchell from responsibility for that injury.

Dr. King opined that Bradner fell on his face, causing soft tissue trauma to his nose. The resulting pain in the ear was due to the impingement of a deviated septum on the sphenopalatine nerve, which caused neuralgia. The nasal septoplasty he per-

formed in 1979 relieved Bradner's neuralgic pain, although he continued to complain of a partial hearing loss in the left ear. Dr. King was unable to relate the hearing loss to the injury with medical certainty. He thought it could possibly have resulted from exposure to occupational high-pitched noise. He was firmly of opinion, however, that the trauma Bradner had suffered in June 1978 had been either the sole cause, or a contributing cause, of the injury to his nose which necessitated surgery to relieve his pain. Thus, there was no credible evidence from which a rational fact-finder could have found Bradner's nasal surgery so unrelated to Mitchell's conduct as to exonerate Mitchell from responsibility for that injury.

Dr. Weaver was subjected to no cross-examination concerning the causation of Bradner's head injury, and Bradner's evidence concerning his lost wages was not challenged in any way. Thus, we conclude that Bradner's evidence of special damages was uncontroverted and so complete that no rational fact-finder could disregard it. It follows that this case falls into the category of *Glass* v. *Pender Grocery Co.*, *Rome* v. *Kelly Springfield*, and *De-Wald* v. *King*, and we must regard the proved special damages as a fixed constituent part of the verdict. The verdict, therefore, allows only $42.65 as compensation for Bradner's physical pain, mental anguish, humiliation and permanent disfigurement, all of which were included within the court's damage instruction. We have no hesitation in holding that sum inadequate as a matter of law.

Because the foregoing holding requires reversal, it must be determined whether the case should be remanded for trial on all issues or for trial limited to the issue of damages. That determination is guided by the rules set forth in the seminal case of *Rawle* v. *McIlhenny*, 163 Va. 735, 177 S.E. 214 (1934). In that case, Justice Epes, writing for the Court, analyzed the five classes into which cases may be divided when a plaintiff seeks to overturn a plaintiff's verdict on the ground of inadequacy, over the defendant's objection. They may be paraphrased as follows:

(1) Cases in which the evidence of *liability* was insufficient to support a plaintiff's verdict.
(2) Cases in which the evidence of liability would have been insufficient to support a defendant's verdict.

(3) Cases in which the evidence decidedly preponderates in defendant's favor, but there is sufficient evidence to support a plaintiff's verdict.

(4) Cases in which the evidence is the reverse of class (3) above.

(5) Cases of conflicting evidence, having no clear preponderance either way.

*Id.* at 748-49, 177 S.E. at 220-21.

■ This case falls into the second class identified by *Rawle* v. *McIlhenny*. Mitchell admitted the assault and battery. His defense at trial was that he was rushing to the defense of his son. Yet the evidence was that the altercation between Bradner and Mitchell's son was purely verbal, and that Mitchell had no reason to believe that his son was in danger of death or great bodily harm. The court instructed the jury:

> Should you find that James Mitchell used force which was disproportionate to the occasion, or that he used force that was likely to cause death or great bodily harm, when his son James Mitchell, Jr. was not in danger of suffering death or great bodily harm, then James Mitchell is not entitled to the privilege of self-defense or defense of another.

That instruction was given without objection and became the law of the case. *Norfolk & Portsmouth Railroad* v. *Barker*, 221 Va. 924, 928, 275 S.E.2d 613, 615 (1981). Thus, applying the law of the case, there was no evidence which could have supported a defendant's verdict, and any such verdict would have to be set aside. In such cases, where a plaintiff's award of damages is set aside as inadequate, the case must be remanded for a new trial limited to the issue of damages. *Rawle* v. *McIlhenny*, 163 Va. at 748, 177 S.E. at 220.

Accordingly, we will reverse the judgment appealed from and remand the case for a new trial, limited to the issue of damages.

*Reversed and remanded.*