# David. K. Davoudlarian, M.D.

## v.

# Karlissa B. Krombein

Record No. 911202

June 5, 1992

Present: All the Justices

*Norman F. Slenker (Slenker, Brandt, Jennings & Johnston,* on brief), for appellant.

*Benjamin W. Glass, III (Brian C. Shevlin; Shevlin & Glass,* on brief), for appellee.

JUSTICE WHITING delivered the opinion of the Court.

In this medical malpractice case, the controlling issues are whether a jury's award of damages was inadequate and, if so, whether the trial court correctly limited the issue on retrial to that of damages.

In August 1988, complaining of pain in the left lower portion of her abdomen, Karlissa B. Krombein consulted her gynecologist, Dr. David B. Davoudlarian. A sonogram disclosed that she had a lump on one of the appendages of the uterus.

On Wednesday, September 7, 1988, after treatment with drugs had proven ineffective, Dr. Davoudlarian performed a diagnostic laparoscopy upon Krombein while she was an outpatient in the Northern Virginia Doctors Hospital in Arlington (Doctors Hospital). The diagnostic laparoscopy was accomplished by inserting a surgical instrument called a laparoscope through a small incision in her abdomen and observing Krombein's ovaries through the laparoscope.

During this procedure, Dr. Davoudlarian observed a cyst on Krombein's left ovary, which he decided to treat with a drug, possibly followed with surgery. Krombein was discharged later that day and went home to convalesce.

On Saturday, September 10, at 5:00 p.m., complaining of severe abdominal pain and of an elevated temperature, Krombein was taken to the emergency room of Doctors Hospital where she was to meet Dr. Davoudlarian. Before Dr. Davoudlarian saw her, an emergency room physician and a "house officer," who was a medical student, made a diagnosis of peritonitis after examining Krombein. Peritonitis is an inflammation or an infection of the inner lining of the abdomen.

At 5:30 p.m., Dr. Davoudlarian examined Krombein, took a medical history from her, and admitted her to the hospital for treatment. Dr. Davoudlarian did not believe that her symptoms indicated that she was suffering from peritonitis. His impression was that Krombein was suffering from a pelvic inflammation of an unknown origin. Accordingly, he decided to treat Krombein in a conservative manner by giving her antibiotics and pain and temperature depressants, making periodic tests, and observing her reaction.

Although Dr. Davoudlarian believed that Krombein was improving on the day following her admission, her condition deteriorated dramatically on the third day after her admission. At that time, Dr. Davoudlarian began to suspect peritonitis. He ordered more tests, and consulted Dr. Charles R. Rickerich, a general surgeon.

After Dr. Rickerich examined Krombein and reviewed her medical records, he and Dr. Davoudlarian operated on Krombein because Dr. Rickerich thought that Krombein was in danger of dying from generalized peritonitis. During surgery, Dr. Rickerich discovered visible stool coming through a four centimeter laceration on Krombein's large bowel, purulent fluid in the pelvic area, and a number of adhesions in the pelvic area caused by a generalized peritonitis. Dr. Rickerich closed the laceration and performed a colostomy.

Krombein spent several days in intensive care after the operation. She developed a number of post-operative complications, and was discharged from the hospital on October 15, about five and a half weeks after her admission. Krombein's bills for this surgery and hospitalization totalled $108,637.44. The amounts and reasonableness of these bills were undisputed.

Krombein had further operations and treatments following her October 15 discharge at a cost of $70,884. Krombein did not return to work until approximately 16 months after her first hospitalization, resulting in lost income of $71,073.60.

Krombein sued Dr. Davoudlarian for malpractice. At a jury trial, she contended, and medical experts testified, that he violated the standard of medical care: (1) by failing to properly diagnose and to appropriately treat her condition upon her admission to the hospital on September 10, and (2) by failing to promptly consult other physicians. Dr. Davoudlarian testified in contradiction of the opinions of Krombein's experts. The jury returned a $10,000 verdict for Krombein.

On motion by Krombein, and over the objection of Dr. Davoudlarian, the trial court set this verdict aside as inadequate and ordered a new trial solely on the issue of damages. At this trial, another jury returned a $1,500,000 verdict for Krombein. Reducing that verdict to $1,000,000 in conformity with the *ad damnum* clause of Krombein's motion for judgment and Code § 8.01-581.15, the trial court entered final judgment for Krombein in the sum of $1,000,000. Dr. Davoudlarian appeals.

First, Dr. Davoudlarian argues that the $10,000 verdict was not inadequate and, therefore, that the trial court erred in setting it aside. We do not agree.

■ Dr. Davoudlarian merely speculates that the $10,000 verdict may have been an award of plaintiff's medical and hospital expenses up to September 13, which totalled $10,002. However, he gives no reason why he should not also be responsible at least for Krombein's expenses during the balance of that hospitalization. If Dr. Davoudlarian is liable for the cost of Krombein's first three days of hospitalization and treatment, he necessarily would be liable for the balance of those costs that were incurred in the remaining days of that admission because they also resulted from his deviation from the appropriate standard of care. Those costs were $98,516.44.

■ Where a plaintiff's "evidence of special damages [is] uncontroverted and so complete that no rational fact-finder could disregard it," a verdict for a lesser sum than those damages is inadequate as a matter of law. *Bradner* v. *Mitchell*, 234 Va. 483, 490, 362 S.E.2d 718, 722 (1987). A $10,000 verdict is clearly inadequate to compensate Krombein for this $108,635.44 loss. Accordingly, the trial court correctly set aside the $10,000 verdict.

Next, we consider Dr. Davoudlarian's argument that the trial court erred in limiting the new trial to the issue of damages. In this instance, we agree with him.

On brief, and without citation of authority, Krombein argues that Dr. Davoudlarian "never even put on a *prima facie* defense by testifying that his conduct in delaying surgery for three days complied with the standard of care." However, in oral argument, Krombein's counsel conceded that "there is no requirement that mandates that."

■ Indeed, a defendant has no duty to prove that he was not negligent; instead, the plaintiff has the affirmative burden of proving the defendant's negligence. *Rogers* v. *Marrow*, 243 Va. 162, 167, 413 S.E.2d 344, 346 (1992). Thus, in this case, Dr. Davoudlarian had no affirmative duty to prove that he complied with the appropriate standard of care; to the contrary, Krombein had the burden of establishing the appropriate standard of care and of proving that Dr. Davoudlarian violated it.

The issue here turned upon Krombein's condition and what Dr. Davoudlarian should have known and done about it during the three-day period preceding her operation on September 13. We list some of the evidence from which a jury might infer that Krombein had not proven that Dr. Davoudlarian had violated the appropriate standard of care.

Krombein's medical experts testified that Dr. Davoudlarian might have lacerated that portion of Krombein's colon known as the rectosigmoid colon during the laparoscopy and, if so, that this laceration would eventually cause fecal material to leak into the abdomen, resulting in peritonitis. Thus, those experts opined that Dr. Davoudlarian should have suspected peritonitis when he examined Krombein on September 10.

However, Dr. Davoudlarian testified that: (1) because the laparoscope was some distance from the rectosigmoid colon during this procedure, it was impossible for him to have lacerated it at that time; (2) that the medical literature disclosed no incidents of a lacerated rectosigmoid colon during a laparoscopy; and (3) that the tests he had completed prior to Krombein's operation did not indicate that she had a lacerated colon. Also, Dr. Davoudlarian testified that Krombein had failed to tell him that she had taken an enema the morning before he saw her on September 10. He testified that had she done so, he would have been more suspicious "that something

was going on in the pelvic and rectal area'' because, in his opinion, such an enema could have caused a rent in the bowel.

Krombein's experts also testified that the tests Dr. Davoudlarian had conducted, as well as the notations on Krombein's hospital chart, should have indicated to him that long before the third day of her hospitalization Krombein was suffering from peritonitis. On the other hand, Dr. Davoudlarian, in discussing the various tests and notations, testified that they did not indicate that his original diagnosis and course of treatment and observation were inappropriate.

In sum, at the least, Dr. Davoudlarian's evidence would have been sufficient to justify a jury's conclusion that Krombein had not proved her case by the required preponderance of the evidence. Thus, the evidence in the first trial was conflicting and might have supported a verdict for either party, but there was no clear preponderance of evidence in favor of either party.

And, in such an instance, where the record fails to indicate clearly that the evidence on the issue of liability did not influence the jury in its award of obviously inadequate damages, a trial court abuses its discretion in limiting the issue on retrial to one of damages only. *Rawle* v. *McIlhenny*, 163 Va. 735, 750-51, 177 S.E. 214, 221 (1934). In our opinion, this is such a case, and the court's limitation of the issues on retrial was an abuse of its discretion.

Accordingly, we will reverse the judgment of the trial court and remand the case for a new trial on all issues.

*Reversed and remanded.*