84

## CIRCUIT COURT OF THE CITY OF RICHMOND

Deborah Hansen

v.

James McFarland,
Frances V. Woody,
and Melvin G. Hansen

September 22, 1993

Case No. LU-132

BY JUDGE ROBERT L. HARRIS, SR.

On July 1–2, 1993, the Plaintiff, Deborah Hansen, and the Defendants, James McFarland, Frances V. Woody, and Melvin G. Hansen, presented evidence in a jury trial addressing the claim of the Plaintiff that various negligent acts by the Defendants had been proximate causes of injuries she allegedly sustained in an automobile accident. Defendant Woody's vehicle had stopped because material carried in Defendant McFarland's truck had fallen into the roadway. Apparently within seconds after Woody stopped her vehicle, she was struck from the rear by a vehicle driven by Defendant Hansen, in which the Plaintiff was a passenger.

Following the presentation of the evidence, the Court granted Defendant Woody's Motion to Strike as to the evidence against her, and the case was sent to the jury only with respect to the alleged negligence of Defendants McFarland and Hansen and any damages which might be owed the Plaintiff from any such negligence. The jury returned a verdict in favor of Defendant McFarland and against Defendant Hansen in the amount of $3,621.80 for her personal injuries.

Citing to her evidence of medical bills of $6,744.80, the Plaintiff moved the Court to set aside the jury's verdict as inadequate and also moved the Court to set aside the verdict in favor of Defendant McFarland, arguing, essentially, that he was negligent as a matter or law for failing adequately to secure cargo to his truck. Defendant Hansen joined in the motion to set aside the verdict in favor of Co-Defendant McFarland and also moved to set aside the jury's verdict against him. The Court denied these motions and entered judgment on the verdict.

However, on July 21, 1993, the Court vacated its Order to allow reconsideration of its decision to enter judgment on the jury's verdict. After reconsideration of the evidence and testimony presented, the Court now confirms the jury's verdict in favor of Defendant McFarland and confirms the jury's verdict finding that only Defendant Hansen was liable to the Plaintiff for her injuries but sets aside the verdict against Defendant Hansen as inadequate.

All parties agree that the burden placed upon one who wishes to have a jury verdict set aside is a rigorous one.

> Great respect is accorded a jury verdict, and it is not sufficient that a trial judge, had he been on the jury, would have rendered a different verdict. Indeed, every reasonable inference must be drawn in favor of a verdict that has been rendered fairly under proper jury instructions . . . .

> "If there is conflict of testimony on a material point, or if reasonably fairminded men may differ as to the conclusions of fact to be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed . . . by the trial court . . . ."

*Hall v. Hall*, 240 Va. 360, 363, 397 S.E.2d 829, 831 (1990) (quoting *Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S.E. 15, 19 (1921)).

Taking the evidence presented in the light most favorable to the non-moving party, *see, e.g., Salih v. Lane*, 244 Va. 436, 438, 423 S.E.2d 192, 194 (1992) ("According to settled principles of appellate review, we will consider the evidence in the light most favorable to the plaintiff, who comes to this Court armed with a jury verdict approved by the trial judge."), the Court finds that the jury could reasonably have concluded that any negligence on the part of Defendant McFar-

land was not the proximate cause of the ensuing collision between the vehicle driven by Defendant Hansen and that driven by Defendant Woody. Even if the fact that a portion of the load which McFarland was transporting on his truck slid off into the road demonstrated a violation of section 46.2-1156 of the Code of Virginia, which makes it illegal to operate a vehicle on state highways without securing its contents, *see* Va. Code Ann. § 46.2–1156 (Supp. 1993), and even if a violation of that statute would constitute negligence *per se*, the Plaintiff in the present case would still be required to prove that McFarland's negligence was a proximate cause of the accident which led to the Plaintiff's injuries. *See, e.g., Pullen & McCoy v. Nickens*, 226 Va. 342, 349, 310 S.E.2d 452, 455 (1983) (negligence *per se* "will support the recovery of damages if it was a proximate cause of the injury"). In the present case, it is undisputed that Frances Woody observed McFarland and his spilled truck contents in time to stop and avoid a collision. It was, therefore, not unreasonable for the jury to conclude that Melvin Hansen had the same opportunity to observe the debris and the Woody vehicle — concluding that his failure to avoid a collision with Woody's vehicle was proximately caused solely by his own negligence. Accordingly, that portion of the jury's verdict which found in favor of Defendant McFarland and, conversely, against Defendant Hansen, will be upheld.

The appropriate treatment of the jury's verdict with respect to the quantum of damages assessed against Defendant Hansen in favor of the Plaintiff poses a somewhat more difficult question. After the presentation of evidence, the Court was left with the distinct impression that sufficient doubt had been cast upon the extent of the Plaintiff's alleged injuries that a reasonable jury could, in fact, award her less than her claimed medical expenses. However, upon reviewing the transcript and the evidence presented, the Court now believes that, argument and innuendo aside, there was no *evidence* presented which contradicted any of the Plaintiff's medical expense claims.

"[W]here evidence [of special damages] is uncontroverted and so complete that no rational fact-finder could disregard it . . . it must be considered as a fixed, constituent part of the verdict." *Bradner v. Mitchell*, 234 Va. 483, 487, 362 S.E.2d 718, 720 (1987). In the present case, the Plaintiff offered the testimony of Dr. William Ashworth, a chiropractor, to demonstrate the extent of the injuries she believed resulted from her collision with Ms. Woody's vehicle. He testified

regarding the Plaintiff's continuing, and allegedly permanent, discomfort arising from her injuries — discomfort for which only ongoing treatment, and not a cure, was possible. (Transcript at p. 52.) The injuries were characterized as arising from a misalignment of the cervical spine area, (Tr. at 46–49), and a compression fracture of one of the vertebrae. (Tr. at 50.)

On cross-examination, the Defendants referred to the opinion of a consulting neurologist, Dr. Stephen Jaffe, that the compression fracture had actually occurred in an earlier, and arguably more severe accident, in 1983. (Tr. at 57–60.) This opinion was confirmed in the subsequent testimony of Dr. Jaffe. (Tr. at 73, 91.) However, both he and Dr. Ashworth also testified that the extent of the Plaintiff's treatment was unaffected by that injury, regardless of its age. (Tr. at 63–64, 73.)

Additionally, on cross-examination, the Defendants generally sought to cast doubt on Dr. Ashworth's diagnoses and the necessity of his treatment. (Tr. at 53–62.) However, despite the somewhat skeptical view of the testimony with which their efforts may have left the jury, and even this Court, the fact remains that no *evidence* contradicting Dr. Ashworth's diagnoses and treatment was offered.

Dr. William Henceroth, an orthopaedist to whom the Plaintiff was referred by Dr. Ashworth, testified on behalf of the Defendants. On direct examination, he did testify that, while in his office on February 21, 1992, the Plaintiff revealed neither significant discomfort nor physical limitations as a result of her alleged injuries, and that her physical exam was, at that time, normal. (Tr. at 101–04.) He also testified, on cross-examination, that his diagnosis was of residual pain from cervical and lumbar strain. (Tr. at 105.) He added that the strain resulted from the accident which was the subject of this lawsuit (Tr. at 106), and that not only did he not dispute the treatment utilized by Dr. Ashworth, but recommended that the Plaintiff continue seeing Dr. Ashworth. (Tr. at 105–06.) This approval of Ashworth's treatment echoed that expressed earlier by Dr. Jaffe. (Tr. at 72.)

Thus, all testimony received on the subject validated the necessity and appropriateness of the treatment rendered by Dr. Ashworth; there was no testimony or evidence presented which could have justified a reasonable jury in disregarding the expenses resulting from his treatment. Indeed, there was no evidence presented which challenged any of the amounts claimed by the Plaintiff as necessary medical expenses.

This lack of contradictory evidence distinguishes this case from *Brown v. Huddleston*, 213 Va. 146, 191 S.E.2d 234 (1972). In *Brown*, an initial treating physician saw the plaintiff three times and despite her "multiple complaints" could find nothing physically wrong. *Id.* at 147, 191 S.E.2d at 235. An orthopaedist to whom the plaintiff was referred diagnosed a sprain involving her neck, lower back and hips. The plaintiff subsequently visited this specialist thirty-three times over a three year period and was prescribed various drugs along with neck and back supports. The orthopaedist also predicted that her problems might continue for an additional two or three years. *Id.*, 191 S.E.2d at 235. Another orthopaedist, after examining the plaintiff at the request of the defendant found, as had the first treating physician, that while the plaintiff had "many complaints," he could find nothing objectively wrong. *Id.*, 191 S.E.2d at 235. Because of this conflicting evidence, the Virginia Supreme Court upheld the jury's verdict, although it was for less than one-quarter of the claimed special damages, *see id.* at 146–47, 191 S.E.2d at 235, because "the jury was entitled to find that the plaintiff had not been injured as seriously as she claimed." *Id.* at 147, 191 S.E.2d at 235.

In the instant case, although the Defendants attempted to challenge the credibility of the Plaintiff and her chiropractor, they presented no evidence contradicting her medical claims. As noted earlier, Dr. Henceroth, who testified for the Defendants, diagnosed the Plaintiff's complaints as arising from a cervical and lumbar strain related to her automobile accident. (Tr. at 105–06.) Indeed, Dr. Henceroth's approval of Dr. Ashworth's treatment and his recommendation that the Plaintiff continue seeing Dr. Ashworth (Tr. at 105–06) effectively endorsed, or at least did not dispute, the legitimacy of those medical expenses incurred both before and after the February 21, 1992, examination by Dr. Henceroth.

This failure to present any contradicting evidence can lead to only one result in the present case.

> We have repeatedly held that although a trier of fact must determine the weight of the testimony and the credibility of the witnesses, *it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even though such witnesses are interested in the outcome of the case.*

*Bradner*, 234 Va. at 487, n. 2, 362 S.E.2d at 720, n. 2 (emphasis added). Because the evidence of medical expenses of $6,744.80 arising from the Plaintiff's automobile accident on May 4, 1991, is uncontroverted, the jury could only have reached its decision to award $3,621.80 in damages by arbitrarily disregarding this evidence. Accordingly, the jury's damage award will be set aside and a new trial will be ordered solely on the issue of the quantum of damages owed by Defendant Hansen to the Plaintiff.