# CIRCUIT COURT OF THE CITY OF WINCHESTER

Tina M. Booth

    v.

Michael Jones

January 15, 1999

Case No. (Law) 96-37

BY JUDGE JOHN E. WETSEL, JR.

This case came before the Court on December 7, 1998, on the Defendant's Motion to Reconsider Order Granting New Trial and to Reinstate the Jury Verdict. Robert T. Mitchell, Jr., Esquire, appeared for the Plaintiff; and Steven M. Gombos, Esquire, appeared for the Defendant. Following the hearing, the testimony of one of the plaintiff's treating physicians was transcribed and filed with the court.

## I. *Statement of Material Facts*

The plaintiff was injured on October 11, 1995, in an automobile accident. The Defendant admitted negligence, and the case was tried on the issues of proximate cause and damages on May 7-8, 1998.

The Court earlier granted the Plaintiff's motion for additur of $25,000.00, which was refused, so a new trial was ordered, and the Defendant has now asked that the Court reconsider its earlier ruling.

The plaintiff testified that after the accident she immediately experienced pain in the right side of her body, including her neck, right shoulder, and arm. She also said that she injured her right elbow and left foot in the accident and suffered from jaw syndrome as a result of the accident.

According to the Plaintiff, some of her problems improved in the three to four months following the accident, but she claimed that the problems with her

right shoulder and elbow and her TMJ problems persisted. In the Spring of 1996, she began treatment with another orthopedic surgeon to whom her original treating orthopedic surgeon referred her, and on June 19, 1996, that second orthopedic surgeon surgically repaired the plaintiff's rotator cuff in her right shoulder.

The Defendant contested the fact that the accident caused the plaintiff's injuries. Expert witnesses testified for both the plaintiff and the defendant. Dr. Wynn, the plaintiff's treating physician, testified that, based on the patient's history, she believed that the most probable cause of the plaintiff's shoulder injury was the auto accident, but she admitted on cross-examination that the thinning of the plaintiff's rotator cuff could occur from repeated use of the arm and shoulder over years (transcript, p. 66), that the plaintiff was "not a typical patient" (transcript, p. 66), and the plaintiff "had difficulty dealing with her injuries." Transcript, p. 66. The plaintiff had worked for years as a hardware installer in new homes, and the jury could infer that the thinning of her rotator cuff was a result of her occupational history as opposed to the accident.

The Defendant called an orthopedic surgeon to testify, and he said that the right elbow was not injured in the accident, but he expressed no opinion about the cause of the plaintiff's rotator cuff condition. However, the defendant did point out inconsistent findings regarding the plaintiff's injuries in the reports of Drs. Schultz, Haggerty, Remuzzi, and Goodloe.

The Defendant called a dentist to testify, who said that the plaintiff's TMJ condition was not related to the auto accident. The plaintiff had sixteen teeth missing which predated the accident, and the dentist called by the defendant attributed her jaw problems to her poor dentition.

The Plaintiff introduced an inch of medical bills, Plaintiff's Exhibits 1 through 19. According to the plaintiff, her medical bills for just the neck and shoulder total $8,995.95, and the total medical bills introduced into evidence exceed even that amount.

The Plaintiff also claimed a wage loss of $11,636.84. The Plaintiff was self employed. She had no business records at the trial and said that she had left them at home. She had worked in the hardware installation business for eight to ten years prior to the accident, and, at the time of the accident, she worked as an independent contractor with her boyfriend, and they received one check for their combined work. Before the accident, the plaintiff had scheduled a tubal reversal for December 1995, which she had performed as scheduled. This surgery, which was unrelated to the accident, required her to be off from work, but her claim for lost wages included the convalescent period following this surgery, which was clearly not related to the accident.

After hours of deliberation, the jury returned a general verdict for the plaintiff for $6,834.74. Given the constellation of medical problems which the plaintiff attributed to the accident and the amount and number of the medical bills and the problematic nature of the plaintiff's lost wage claim, there are literally hundreds of possible mathematical permutations of the evidence based on selections of certain of the plaintiffs medical expenses and lost wage claims and not others. Consequently, despite the passage of six months and two hearings on the motion to set aside, no one has been able to proffer to the Court an explanation of what the verdict of $6,834.74 represents. However, given the amount which the plaintiff claimed and the evidence which she introduced, it is clear that the jury did find for the plaintiff with respect to most of her medical claims and for very little of her lost wage claims.

In this case, the plaintiff changed treating physicians, and the court had reviewed the medical bills admitted into evidence and found that the total of the bills for the six months immediately following the accident is $2,803.52. Her first orthopedic surgeon treated her conservatively for the injuries sustained in the accident. If the jury found that the rotator cuff injury and the TMJ injury, the latter of which was a very tenuous claim, were not related to the accident, then the jury verdict is not out of line with the specials, particularly in view of the controverted evidence on both the plaintiff's medical condition and her lost wage claim.

## II. *Conclusions of Law*

In *Hall v. Hall*, 240 Va. 360, 363-65, 397 S.E.2d 829 (1990), *quoted with approval* in *Hundley v. Osborne*, 256 Va. 173, 500 S.E.2d 810 (1998), the verdict was for $48.69 less than the specials; the Supreme Court ordered a new trial on damages only and in so ruling stated:

> Great respect is accorded a jury verdict, and it is not sufficient that a trial judge, had he been on the jury, would have rendered a different verdict. Indeed, every reasonable inference must be drawn in favor of a verdict that has been rendered fairly under proper jury instructions. *Forbes & Co. v. Southern Cotton Oil Co.*, 130 Va. 245, 259, 108 S.E. 15, 19 (1921). The time-honored standard that a court must apply in deciding whether to approve a verdict was stated succinctly in *Forbes*:
>
> *If there is conflict of testimony on a material point, or if reasonably fairminded men may differ as to the conclusions of fact to*

*be drawn from the evidence, or if the conclusion is dependent upon the weight to be given the testimony, in all such cases the verdict of the jury is final and conclusive and cannot be disturbed either by the trial court or by this court, or if improperly set aside by the trial court, it will be reinstated by this court. Id.; accord May v. Malcolm,* 202 Va. 78, 84, 116 S.E.2d 114, 119 (1960); *Atlantic Greyhound Corp. v. Shelton,* 184 Va. 684, 693, 36 S.E.2d 625, 628-29 (1946).

(Emphasis added.)

As the Supreme Court observed in *Virginia and Maryland R.R. v. White,* 228 Va. 140, 145, 319 S.E.2d 755 (1984) (quoting *Bly v. Southern Ry.,* 183 Va. 162, 175, 31 S.E.2d 564 (1944)):

It is the jury, not the court, which is the fact-finding body. It weighs the contradictory evidence and inferences, judges the credibility of witnesses, receives expert instructions, and draws the ultimate conclusion as to the facts. *The very essence of its function is to select from among conflicting inferences* and conclusions that which it considers most reasonable .... That conclusion, whether it relates to negligence, causation or any other factual matter, cannot be ignored. Courts are not free to reweigh the evidence and set aside the jury verdict merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable.

(Emphasis added.)

Having heard the case and being confronted with a motion to set aside, there is a temptation for the court to supplant its judgment for that of the jury, and this court yielded to that intellectual temptation and its misconception of the import *Bowers v. Sprouse,* 254 Va. 428 (1997), when it ordered the $25,000.00 additur, which was a mistake. In ruling on the motion to set aside the court must resist the Siren's call of the evidence, and like the crew of Ulysses, it must place wax in its ears and objectively review the facts in light of the governing legal principles to see whether the verdict may stand or should be set aside.

"It is well settled that the credibility of witnesses, the weight accorded witnesses' testimony, and the inferences to be drawn from proven facts are matters that are within the province of the fact finder." *See Barrett v. Commonwealth,* 231 Va. 102, 107, 341 S.E.2d 190, 193 (1986).

"Proximate cause is usually a question of fact for the jury. It is only when facts are susceptible of but one inference, and reasonable men can reach but one conclusion from them, that the question becomes one of law for the court." *Taylor v. Great Atl. & Pac. Tea Co.*, 209 Va. 64, 66, 161 S.E.2d 692 (1968). "Whether a plaintiff's negligence is a proximate cause of his injuries is typically a jury issue." *Hadeed v. Medic-24, Ltd.*, 237 Va. 277, 285, 377 S.E.2d 589, 593 (1989).

Whether the auto accident caused the plaintiff's injuries was the contested issue in this case. The plaintiff claimed that she had numerous injuries caused by the auto accident: minor head and neck injuries, right shoulder and elbow injuries, and a TMJ injury. From the amount of the verdict, the inference to be drawn is that the jury concluded that only the minor head and neck injuries were caused by the accident, which resolved in the months following the accident, and that the elbow, shoulder, and TMJ conditions were conditions which were unrelated to her auto accident, and that the plaintiff overstated her lost wage claim.

As Dr. Wynn stated, a rotator cuff injury may arise from manual labor. Transcript, p. 66. The plaintiff had performed manual labor for years prior to the accident, and the premise of her lost wage claim was that her injuries prevented her from doing the manual labor in which she was involved prior to the accident. The cause of a rotator cuff injury is frequently litigated, and there are literally scores workers' compensation cases, where the cause of the rotator cuff injury is the bone of contention. *See e.g. Washington Post v. Bush* (Va. App. 1998) and *Stancill v. Ford Motor Co.*, 15 Va. App. 54, 421 S.E.2d 872 (1992).

As jury verdicts have become more conservative in recent years, there has been a spate of appellate cases on the adequacy of jury verdicts. In *Toombs v. Hayes*, 256 Va. 193, 501 S.E.2d 409 (1998), the jury returned a verdict for the exact amount of the medical expenses and lost wages and the Supreme Court ruled that such verdicts for the exact amount of the specials must be set aside, explaining its reasoning as follows:

> Recently, in *Bowers v. Sprouse*, 254 Va. 428, 492 S.E.2d 637 (1997), decided after the trial court ruled in the present case, we held that "a jury award in a personal injury action which compensates a plaintiff for the exact amount of the plaintiff's medical expenses and other special damages is inadequate as a matter of law, irrespective of whether those damages were controverted." *Id.* at 431, 492 S.E.2d at 639. *This is so, we said, because such a verdict "indicates that*

*although the jury found the plaintiff was injured and had incurred
special damages, the jury, for whatever reason, failed to compensate
[the plaintiff] for any other items of damage." Id.,* 492 S.E.2d at 638.
We noted that, "at a minimum, [the] plaintiff experienced pain,
suffering, and inconvenience ... and was entitled to compensation for
[those] elements of damage." *Id.*

(Emphasis added.)

The present case is distinguishable from *Bowers* and *Toombs,* because the
verdict is not for the exact amount of the medical expenses and other special
damages, and the plaintiff's evidence was controverted. The plaintiff claimed
numerous accident related injuries, and the evidence on both the medical
expenses and the lost wage claim was controverted. No one knows what the
$6,834.74 is for, but it is clear that unlike *Bowers* and *Toombs,* the jury did not
find that the plaintiff's injuries were as extensive as she claimed.

In *Hundley v. Osborne,* 256 Va. 173, 500 S.E.2d 810 (1998), the plaintiff
received a verdict for $125,000.00 to which the trial court granted additur, and
the Supreme Court reversed noting:

The dispositive issue in this appeal is whether the jury's verdict
is inadequate as a matter of law because the jury did not award a
sufficient amount to Osborne for future medical expenses and future
loss of wages. *Resolution of this issue turns on whether Osborne's
evidence of future medical expenses and loss of wages was
uncontroverted.*

We stated in *Bradner v. Mitchell,* 234 Va. 483, 487, 362 S.E.2d
718, 720 (1987), that when a plaintiff's evidence of special damages
"is uncontroverted and so complete that no rational fact-finder could
disregard it ... it must be considered as a fixed, constituent part of the
verdict." *See also Davoudlarian v. Krombein,* 244 Va. 88, 91, 418
S.E.2d 868, 870 (1992). However, we also stated that when "the
plaintiff's evidence of special damages is controverted, doubtful as to
nature and extent ... then neither the circuit court nor we, on appeal,
can say that the plaintiff's special damages constituted any fixed part
of the jury's verdict." *Bradner,* 234 Va. at 487, 362 S.E.2d at 720-21.
In the latter situation, "the verdict cannot be disturbed on a claim of
inadequacy." *Id.* at 488, 362 S.E.2d at 721.

In the present case, we cannot say that Osborne's evidence
regarding future medical expenses and loss of wages "is

uncontroverted and so complete that no rational fact-finder could disregard it." *Id.* at 487, 362 S.E.2d at 720.

(Emphasis added.)

On January 8, 1999, the Supreme Court of Virginia released four decisions in which they reversed trial courts which, relying on *Bowers*, had granted plaintiff's motions to set aside because the verdict was inadequate as a matter of law. In *Richardson v. Braxton-Bailey*, 257 Va. 61 (1999), there were three trials with three separate damage verdicts, and the Supreme Court ruled that the first verdict which was for less than half of the claimed specials should not have been set aside. In *Walker v. Mason*, 257 Va. 65 (1999), the plaintiff claimed specials of $4,431, and the verdict of $230.00, which was an amount equal to the emergency room charges, was reinstated. In *Williams v. Simmons*, 257 Va. 65 (1999), the plaintiff claimed specials of $1,386, and the jury verdict of $560 was reinstated. In *Walker v. Creasy*, 257 Va. 65 (1999), the plaintiff claimed specials of $2,700, and the jury verdict of $2,786.00 was reinstated. *Bowers* may not be dead, but its limited scope is now clear.

In the instant case, the verdict is not for the amount of the specials and the evidence on damages is controverted, so it is within the purview of *Brown, May, Doe, Hundley* and the four cases decided in 1999; therefore, it was for the jury to weigh the evidence and resolve the conflict.

As the Court of Appeals stated in *Street v. Street*, 25 Va. App. 380, 387, 488 S.E.2d 665 (1997):

> It is well established that the trier of fact ascertains a witness' credibility, determines the weight to be given to their testimony, and has the discretion to accept or reject any of the witness' testimony. *Bridgeman v. Commonwealth*, 3 Va. App. 523, 528, 351 S.E.2d 598, 601 (1986). Further, *the fact finder is not required to accept the testimony of an expert witness merely because he or she has qualified as an expert. McLane v. Commonwealth*, 202 Va. 197, 205-06, 116 S.E.2d 274, 281 (1960). In determining the weight to be given the testimony of an expert witness, the fact finder may consider the basis for the expert's opinion. *Gilbert v. Summers*, 240 Va. 155, 393 S.E.2d 213 (1990).

(Emphasis added.)

In this case Dr. Wynn's opinion was premised on the history which the plaintiff gave her. If the jury believed that the history which the Plaintiff gave

Dr. Wynn was unreliable, then the jury was entitled to disregard Dr. Wynn's testimony as to the cause of the right shoulder injury.

Where the verdict is for less than the claimed specials like this case, then the court must examine the evidence, determine whether the evidence on damages was controverted and draw all inferences from the evidence in favor of the defendants position, and if in so doing, it can be concluded that the verdict is supported by the evidence, then the motion must be denied. *See* four 1999 Supreme Court cases, *Brown v. Huddleston*, 213 Va. 146, 191 S.E.2d 234 (1972) (verdict of $1,500 allowed to stand even though plaintiff claimed specials of $6,420); and *Doe v. West*, 222 Va. 440, 281 S.E.2d 850 (1981) ($2,800 verdict reinstated as opposed to second verdict for $30,000). The Court in *Bradner* announced that the distinction between the two lines of cases, "lies in the differing quality of the plaintiff's evidence of special damages." 234 Va. at 487, 362 S.E.2d at 720. In this case, the evidence on the plaintiff's specials was controverted, and "the jury was entitled to find that the plaintiff had not been injured as seriously as she claimed." *May v. Leach*, 220 Va. 472, 474, 260 S.E.2d 456 (1979) (verdict for thirty cents less than the specials was not set aside).

## III. *Decision*

For the foregoing reasons, it is adjudged and ordered that the Defendant's Motion to Reconsider Order Granting New Trial and to Reinstate Jury Verdict is granted and the Jury Verdict of $6,834.74 is reinstated and the Plaintiff's motion for a new trial is denied.