## CIRCUIT COURT OF MADISON COUNTY

Patsy E. Dodson

v.

Judy Dodson
and Bessie Dodson

March 10, 2005

Case No. CL03001850-00

BY JUDGE DANIEL R. BOUTON

I set forth below the ruling of the court in connection with the plaintiff's motion to set aside the verdict and order a new trial.

### Procedural History

This matter comes before the court based on a jury trial that was conducted on December 1, 2004, in the Madison County Circuit Court. The jury found the defendants liable and awarded damages to the plaintiff in the amount of $6,281.79.

The plaintiff moves to set aside the verdict as inadequate and asks the court to award a new trial that is limited to the question of damages. On the other hand, the defendants request that the court uphold the verdict of the jury and enter final judgment in that amount.

Both sides have submitted written arguments in support of their respective positions. The court has given full consideration to the arguments and has conducted a review of the evidence that was introduced at the trial.

## Discussion

The dispute between the parties regarding whether the verdict should be set aside is based on the total amount of damages that were awarded by the jury to the plaintiff. In support of their competing arguments, both sides emphasize the evidence that was presented at trial on the issue of special damages. A comprehensive discussion of this question can be found in the leading case of *Bradner v. Mitchell*, 234 Va. 483, 362 S.E.2d 718 (1987). The *Bradner* court held that, in deciding whether a jury verdict should be set aside, the trial judge must evaluate the quality of the evidence on the special damages that are being claimed by the plaintiff. When such evidence "is uncontroverted and so complete that no rational fact-finder could disregard it . . . it must be considered as a fixed, constituent part of the verdict." *Id.*, at p. 487. In such cases, where the verdict rendered is in an amount that does not properly reflect the uncontroverted special damages, it must be set aside as inadequate. On the other hand, where the plaintiff's evidence on special damages "is controverted, doubtful as to nature and extent, or subject to substantial question whether attributable to the defendant's wrong or to some other cause . . . then neither the trial court nor we, on appeal, can say that the plaintiff's special damages constituted any fixed part of the jury's verdict." *Id.*, at p. 487. In such cases, the court must affirm the judgment of the jury and enter final judgment in the amount of its verdict.

The difficulty in the case before the court is that the evidence on special damages can actually be divided into two separate periods of time. First, as noted by Mr. Berry, beginning from the date of the dog bite through May 23, 2001, the evidence was largely undisputed. At trial, the defense essentially conceded that, if liability was established, the plaintiff incurred medical expenses, therapy costs, and lost wages during this period of time. On this point, it must be stressed that the doctor who was called as an expert on behalf of the defendants supports the argument that the special damages claimed before May 23, 2001, were proximately caused by the dog bite.

In their memorandum of law, the defendants acknowledge the testimony of their own doctor but argue that the jury could have disregarded all or most of what this witness said in arriving at the amount of their verdict. (Defendants' Memorandum, pp. 4-5.) However, no evidence was presented to impeach or contradict the testimony of Dr. Godette on the special damage claim for this period of time. Moreover, no argument was made at trial that called into question any aspect of his testimony about this portion of the damages. Indeed, the principal reason for his testimony was to challenge the plaintiff's assertion that the negligence of the defendants (if proven) was also

the proximate cause of a substantial quantum of special damages subsequent to May 23, 2001. The premise of such testimony, however, was that, prior to this date, a causal connection existed between the dog bite and the special damages.

A comprehensive review of his testimony in its entirety supports the position taken by the court. For example, Dr. Godette stated that, in his opinion, "this patient sustained a lumbar strain. She obviously had a right ankle laceration. And I think those are soft tissue injuries that would be expected to take care of themselves within a . . . expected period of time, probably four to six months." (Deposition Transcript, p. 14.) He went on to say that "when the symptoms continue beyond the typical four to six month window for a soft tissue injury, the question is, is that from the injury, or is that from what came before? That's a very difficult question to answer. Certainly through the therapy, through the MRI, and EMG, perhaps even through the functional capacity evaluation this patient goes through, *I think those are all treatments that would be specifically directed at this injury.*" (Deposition Transcript, p. 15, emphasis added.) He also states that "she does her final work hardening session as recommended by the F.C.E. in May. About that period of time is when you would have expected. . . ." (Deposition Transcript, p. 15.) He concluded his testimony by noting that "subsequent to May twenty-third of 2001, subsequent treatment was not related to the index injury, the dog bite injury." (Deposition Transcript, p. 17.) Finally, in response to one of Mr. Cattano's questions, Dr. Godette confirmed that all of his opinions were being expressed by him to a reasonable degree of medical certainty. (Deposition Transcript, p. 10.)

The *Bradner* court also provides some guidance regarding how the evidence described above should be evaluated in cases where the adequacy of a verdict is being considered by the trial judge. Specifically, in an important footnote, the court offered the following observation about the significance that must be placed on such testimony: "We have repeatedly held that, although a trier of fact must determine the weight of the testimony and the credibility of witnesses, it may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with the facts in the record, even though such witnesses are interested in the outcome of the case." *Id.*, at p. 487 (citations omitted). Therefore, for the period of time from the date of the incident through May 23, 2001, the court finds that no material dispute exists between the parties on the amount of the special damages. For that period of time, the evidence on such damages was so complete and uncontroverted that this portion of the damage claim must be considered a fixed, constituent part of the verdict. The court

thus rejects the argument of the defendants in their memorandum that the evidence at trial was sufficient for the jury to conclude that not all of the special damages prior to May 23rd were proximately caused by the dog bite, notwithstanding the testimony of Dr. Godette.

Nevertheless, it must be noted that the defense correctly stresses that the parties are completely at odds over the total amount of special damages that were incurred in this case as a result of the dog bite. For the period of time after May 23, 2001, the defendants assert that the plaintiff's past medical problems and her pre-existing condition were the proximate cause of any medical expenses, lost wages, and any pain and suffering that she experienced. The evidence concerning what impact, if any, such prior circumstances had on the plaintiff's claim for special damages was skillfully and vigorously contested at trial. The defendants consistently maintained that, subsequent to May 23, 2001, no special damages claimed by the plaintiff were proximately caused by the dog bite. Therefore, there is merit to the argument that the total amount of special damages in this case was controverted, doubtful as to nature and extent, and attributable to the prior back problems of the plaintiff. It is critical to note, however, that, based on the evidence at trial, this argument only applies to the special damages that are claimed subsequent to May 23, 2001.

Having analyzed and summarized the evidence on special damages as set forth above, the court must now turn its attention to the verdict that was rendered in this case. Once the jury resolved the issue of liability in favor of the plaintiff, they had to address the question of special damages. In the court's view, the jury was properly instructed on the various elements of special damages that they were entitled to consider. As noted previously, there was no dispute that the special damages incurred through May 23, 2001, were proximately caused by the dog bite. Yet, the total amount of the verdict was only $6,281.79.

Regardless of how one views the trial exhibits or computes the figures, the amount of the verdict fell far short of the undisputed special damages that were established by the evidence for the period of time through May 23, 2001. It is not necessary to list all of the specific items and amounts that are contained in the exhibits. Mr. Berry has outlined them clearly in his initial memorandum. Since such damages were uncontroverted, the verdict must be set aside as inadequate. This ruling is consistent with the reasoning of *Bradner, supra*, and other cases with uncontroverted special damages. See *Rome v. Kelly Springfield*, 217 Va. 988, 234 S.E.2d 297 (1977); *DeWald v. King*, 233 Va. 140, 354 S.E.2d 60 (1987).

Now that the court has determined that the verdict must be set aside as inadequate, a second question must be resolved. Specifically, the court must rule on whether the new trial will be on all contested issues or whether it will be confined solely to the question of damages. The leading case on this point remains *Rawle v. McIlhenny*, 163 Va. 735, 177 S.E. 214 (1934). There, the Supreme Court of Virginia held that, when a plaintiff seeks to have set aside a verdict as inadequate, such cases can be divided into five separate categories. The trial judge must first determine which of the five categories should be applied to the disputed verdict and then rule on how the new trial will proceed. In undertaking this task, "a sound discretion is vested in the trial court as to whether the ends of justice will be better served by setting aside, or refusing to set aside, an inadequate verdict and as to whether (if it is set aside) a new trial should be granted upon all issues, or limited to the question of damages; and the appellate court will not reverse the action of the trial court setting aside a verdict as inadequate unless it plainly appears from the record that its action in so doing is plainly wrong." *Id.*, at pp. 750-51.

To begin with, the court does not agree with Mr. Berry's argument that the reasoning in *Hall v. Hall*, 240 Va. 360, 397 S.E.2d 829 (1990), should be followed in this case. In *Hall*, the Supreme Court of Virginia found that the evidence at trial on the question of liability clearly favored the right of recovery. The case thus fell into the fourth category identified by *Rawle*, *supra*; as a result, the new trial was properly limited to the question of damages.

In this case, the court finds that the evidence on liability was not tenuous or questionable; on the other hand, it was not overwhelming in favor of the plaintiff. Conversely, the evidence in support of a defense verdict was not minimal or weak nor was it weighted heavily in favor of the defendants. In short, liability was hotly contested and the evidence at trial could have supported a verdict in favor of either party. Therefore, the court concludes that this case falls into the fifth category of cases defined by Rawle, those of "conflicting evidence, in which there is sufficient evidence to support a verdict in favor of either the plaintiff or the defendant, but in which there is no clear preponderance of the evidence in favor of either." *Id.*, at p. 749.

The court next finds that the amount of damages awarded here is not distinctly separable from the issue of liability. Therefore, in the court's view, "the evidence with reference to liability has probably exerted a material influence upon the jury in determining the amount of the verdict. . . ." *Id.*, at p. 750. Such evidence "warrants the inference that "the jury has arbitrarily determined to make both parties bear a part of the injury. . . ." *Id.*, at p. 750. Under these circumstances, the

*Rawle* court stated that "where the court sets aside a verdict of this class, it should grant a new trial on all issues." *Id.*, at p. 750.

The court's reasoning is also firmly supported by the recent case of *Davoudlarian v. Krombein*, 244 Va. 88, 418 S.E.2d 868 (1992). Similar to the case before the court, the amount of the verdict at the first trial in *Davoudlarian* was for far less than the uncontroverted portion of the special damages. As a result, the trial judge properly set aside the verdict as inadequate but then ordered a new trial solely on the issue of damages. At the second trial, the jury returned a verdict for the plaintiff in the amount of $1,500,000.00. The court reduced the amount of the verdict to conform to the *ad damnum* clause in the plaintiff's motion for judgment and entered final judgment.

On appeal, the Supreme Court of Virginia reversed the trial judge's ruling that limited the second trial to the question of damages. Consistent with this court's finding, *Davoudlarian* held that the evidence on liability "was conflicting and might have supported a verdict for either party, but there was no clear preponderance of evidence in favor of either party." *Id.*, at p. 93. The court went on to cite *Rawle, supra*, in concluding that "in such an instance, where the record fails to indicate clearly that the evidence on the issue of liability did not influence the jury in its award of obviously inadequate damages, a trial court abuses its discretion in limiting the issue on retrial to one of damages only." *Id.*, at p. 93 (citation omitted).

The record here fails to indicate clearly that the evidence on liability did not influence the jury in its award of obviously inadequate damages. As discussed extensively above, the plaintiff's past problems and her pre-existing medical condition rendered the total amount of the special damages a hotly contested issue in the case. At the same time, a significant portion of the damages was uncontroverted. Also, the circumstances of the case were extremely unusual and the evidence on liability was not only vigorously disputed but difficult for the jury to evaluate. That the evidence on liability did not influence the jury to make an award that it deemed fair and reasonable to all parties instead of one that was based solely on the evidence and the damage instructions given by the court is not clearly indicated by the record in this case. Therefore, the new trial will be on all issues, and will not be confined solely to the question of damages.